**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff,**

v.

**TITO CASTRO CONSTRUCTION, INC., Defendant.**

Civ. No. 81–1604(GG).

United States District Court, D. Puerto Rico.

Oct. 14, 1982.

Gabriel Hernandez-Rivera of San Juan, P.R., for plaintiff.

Charles A. Cuprill-Hernandez of Ponce, P.R., for defendant.

## DECISION AND JUDGMENT

WATSON,* Judge:

This action is brought by plaintiff Federal Deposit Insurance Corporation (FDIC) against defendant Tito Castro Construction, Inc., to foreclose on a $5,000,000 mortgage on real estate owned by defendant. The mortgage secures an underlying indebtedness in the principal amount of $3,329,-825.70, together with interest of $357,-450.95. This $3,687,276.65 indebtedness is evidenced by ten promissory notes executed by defendant from September 1, 1976 through March 13, 1978.

The issue is whether defendant may avail itself of the usury law of Puerto Rico, as a defense against the FDIC.[1] For the reasons more fully explained below, the Court concludes that inasmuch as its jurisdiction is invoked pursuant to 12 U.S.C. § 1819 and 28 U.S.C. § 1345, federal law is controlling. Accordingly, the Puerto Rico usury statute is inapplicable as a defense in this action.

As of March 31, 1978 defendant was indebted to Banco Credito y Ahorro Ponceno (the Bank) in the principal amount of $3,329,825.70. The indebtedness was evidenced by promissory notes executed by defendant and secured by a $5,000,000 first mortgage on certain real estate. On that date the Secretary of the Treasury of Puerto Rico ordered the Bank closed and took possession of its assets and affairs. He tendered to the FDIC the appointment as receiver of the Bank, and the FDIC accepted the appointment as required by federal law. On the same date the FDIC, acting in its corporate capacity, and as authorized by 12 U.S.C. § 1823(e), purchased from itself certain assets of the Bank among which was the indebtedness of defendant. The appointment of the FDIC as receiver and its purchase of certain assets from the receiver were approved by the Superior Court of Puerto Rico.

On August 21, 1981 the FDIC filed this action to foreclose the mortgage securing the defendant's indebtedness. The defendant answered and counterclaimed that both the Bank and the FDIC had collected and intended to collect usurious interest in violation of Article 1652 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 4594. After completing their discovery the parties filed a pretrial order and attended a pretrial conference at which they agreed to submit the case for decision on the record. The Court held a hearing on March 8, 1982 for the limited purpose of receiving testimony from the accountant for the defendant on the question of interest rates. At the conclusion of the hearing the parties were ordered to simultaneously file memoranda submitting the case for decision on the record.

The issue to be resolved is which law, federal or state, should be utilized as the rule of decision. Having carefully examined the parties' memoranda and the record as a whole, the Court concludes that the FDIC is not subject to the Puerto Rico usury statute.

This action is not a diversity-of-citizenship suit, so that Puerto Rico law does not perforce apply as it otherwise would under the *Erie* doctrine. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). To the contrary, the jurisdiction of this Court is grounded on 12 U.S.C. § 1819 and 28 U.S.C. § 1345. The former provision empowers the FDIC

> [t]o sue and be sued, complain and defend, in any court of law or equity, State or Federal. All suits of a civil nature at common law or in equity to which the Corporation shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy....

---

* Sitting by Designation from the U.S. Court of International Trade.

1. Although defendant has pleaded usury as a counterclaim, the Court will treat it as an affirmative defense, given that defendant has failed to allege any jurisdictional basis for its counterclaim. *See* Fed.R.Civ.P. 8(a) and (c).

Section 1345 of Title 28, United States Code, vests district courts with jurisdiction in cases where the United States or its agencies sue as parties-plaintiff.[2]

Those courts which have considered this question have held that actions brought under 12 U.S.C. § 1819 and 28 U.S.C. § 1345 are not governed by *Erie. See, e.g., D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); *United States v. California,* 655 F.2d 914, 916–17 (9th Cir. 1980); *FDIC v. Meo,* 505 F.2d 790 (9th Cir. 1974); *United States v. First Nat'l Bank,* 470 F.2d 944, 946 n. 3 (8th Cir. 1973); *United States v. Williams,* 441 F.2d 637, 643 (5th Cir. 1971). This conclusion is fully consistent with the *Erie* Court's concern with forum shopping and uniformity within a state, inasmuch as a federal court sitting in a non-diversity case such as this does not sit as a local tribunal.

An instructive discussion of how federal-state choice of law decisions should be made in cases such as this is provided by Judge Wisdom's well-reasoned opinion in *Georgia Power Co. v. 54.20 Acres of Land,* 563 F.2d 1178, 1185–90 (5th Cir. 1977), *cert. denied,* 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979). After reviewing all of the pertinent Supreme Court decisions, Judge Wisdom concluded:

> Together these cases produce a balancing test.... On one side is the federal interest in carrying out a program in the most efficient and effective manner possible. On the other is a state's interest in the preservation of its control over local interests, particularly traditional interests such as family law and real property transactions, and in preventing the displacement of state law. Of course, the ultimate goal of the creation of federal law by the courts is to carry out the federal program in question.... Thus, if state law would actually frustrate rath-

er than only hinder a federal program, federal common law *must* be applied regardless of state interests.

*Id.* at 1189 (emphasis in original; citations omitted).

Puerto Rico's usury statute calls for the forfeiture of all interest plus 25% of the principal amount of any loan found to be usurious. While sensitive to considerations of state law displacement, the Court nevertheless is constrained to find that the application of the Puerto Rico usury statute in this case would clearly frustrate the congressional purpose in creating the Federal Deposit Insurance Corporation: to promote the stability of, and confidence in, the nation's banking system. *See First State Bank v. United States,* 599 F.2d 558 (3d Cir. 1979), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980); *Gunter v. Hutcheson,* 674 F.2d 862 (11th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 60, —— L.Ed.2d —— (1982) (FDIC has complete defense to state and common law fraud claims on note acquired by it).

■ Moreover, in furtherance of this congressional scheme, the FDIC in its corporate capacity does not simply step into the private shoes of local banks, thereby becoming subject to all defenses which may have been available against such banks. *See* 12 U.S.C. § 1823(e); *Gunter v. Hutcheson; D'Oench, Duhme & Co. v. FDIC,* 315 U.S. at 472, 62 S.Ct. at 686 (Jackson, J., concurring).

■ Because application of the Puerto Rico usury law could actually frustrate a federal program by potentially denying to the FDIC nearly $1,200,000 on the ten promissory notes in issue here, the Court holds that as a matter of federal law the FDIC in its corporate capacity is not subject to a state usury claim on a note acquired by

---

**2.** 28 U.S.C. § 1345 provides in full that:

Except as otherwise provided by Act of Congress, the district courts shall have original

jurisdiction of all civil actions, suits or proceedings commenced by the United States, or

it from a state-chartered FDIC-insured bank.[3]

 Finally, even assuming that the Puerto Rico usury statute is available to defendant as a defense, defendant failed to prove that any of the ten promissory notes are usurious under Puerto Rico law. First of all, usury statutes, being penal in nature, are to be strictly construed. *Fibergrate Corp. v. Research-Cottrell, Inc.,* 481 F.Supp. 570 (N.D.Tex.1979). In addition, where the face of an instrument provides for a lawful interest rate (as do the ten notes executed by defendant), usury will not be presumed, imputed to a party, or inferred if the opposite result can fairly and reasonably be reached. *Wilkins v. M & H Financial, Inc.,* 476 F.Supp. 212, 216 (E.D.Ark.1979). The transaction must be viewed as of the time it was made in the light of all the attendant circumstances. *Id.* One of the cardinal rules in the doctrine of usury is that a contract which in its inception is unaffected by usury cannot be invalidated as usurious by subsequent events. *Nichols v. Fearson,* 32 U.S. (7 Pet.) 103, 109, 8 L.Ed. 623 (1833).

From their inception, the ten promissory notes were not usurious under Puerto Rico law. The interest rate provided in each one (1% over the current prime lending rate) was at all times below the Puerto Rico usury ceiling. Considering that each note was payable on demand, it was only as a consequence of defendant's election to delay in repaying the principal amount of those notes that an effective rate of interest in excess of the Puerto Rico statutory ceiling may have resulted. Defendant had it within its exclusive control and discretion to pay the notes at any time. Such repayment could have avoided any interest charge allegedly in excess of the Puerto Rico legal maximum.

It is therefore

ORDERED that judgment be entered in favor of plaintiff FDIC, together with reasonable attorneys' fees and costs.

---

by any agency or officer thereof expressly authorized to sue by Act of Congress.

**3.** The Court notes that Puerto Rico is a "state" for the purposes of the Federal Deposit Insurance Corporation Act. *See* 12 U.S.C. § 1813(a). Although defendant does not raise

it, the Court further observes that there is no common law of usury, the prohibition against usury being purely a creature of statute. *Scientific Products v. Cyto Medical Laboratory, Inc.,* 457 F.Supp. 1373, 1375 (D.Conn.1978).