In the Matter of CHARTER EXECUTIVE CENTER LTD., Debtor.

CHARTER EXECUTIVE CENTER LTD., Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE CORP., Defendant and Counter-Plaintiff,

v.

CHARTER EXECUTIVE CENTER LTD., Counter-Defendants.

Bankruptcy No. 82–2395.
Adv. No. 82–920.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

June 14, 1983.

John Olson, Tampa, Fla., for F.D.I.C.

Albert I. Gordon, Tampa, Fla., for debtor.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 reorganization case and the matter under consideration is the validity, vel non, of a mortgage held by the Federal Deposit Insurance Corp. (FDIC) encumbering a property owned by Charter Executive Center Ltd. (Charter), the Debtor involved in this reorganization case. The matter is presented for this Court's consideration by a Motion for Summary Judgment, filed by the FDIC which contends that there are no genuine issues of material facts and that FDIC is entitled to a judgment as a matter of law. The procedural background and the facts relevant and germane to the resolution of this controversy as they appear from the undisputed record can be summarized as follows:

The adversary proceeding was commenced by a complaint filed by Charter against FDIC in which Charter sets forth two distinct claims in two Counts. In Count I it is the contention of Charter that it is the owner of certain real property located in Hillsborough County, Florida and that FDIC claims a lien on the subject property as an assignee of a mortgage and a note from the Metropolitan Bank and Trust Company (Metropolitan), its predecessor in interest. It is the contention of Charter that Metropolitan knowingly and wrongfully demanded and received from Charter an interest rate on the loan secured by the mortgage at a rate in excess of 25% per annum in violation of Chap. 687.071 of the Florida Statutes; accordingly, the loan is usurious and, therefore, the debt secured by the mortgage is unenforceable and should be forfeited.

The claim set forth in Count II of the complaint by Charter alleges that the mortgage was not properly recorded in compliance with the requirement of Chap. 695.03 of the Florida Statutes, therefore, the recordation is a legal nullity and ineffective. Furthermore, Charter, armed with the special voiding powers of a trustee in bankruptcy granted by § 544(a) of the Bankruptcy Code, contends that its judgment creditor status defeats the unperfected interest of Metropolitan and in turn, its successor in interest, the FDIC. Charter seeks a declaration by this Court that the mortgage lien is invalid and unenforceable; that the debt is unenforceable; and that the amount of $2,698,731.88, which represents the principal amount outstanding and all accrued interest, shall be forfeited.

FDIC filed its answer in due course and asserted as an affirmative defense that FDIC as an instrumentality of the United States of America is not subject to penalty, forfeiture or any defenses based on the claim of usury charged against its predecessor in interest, the Metropolitan Bank. In addition, FDIC also filed a counterclaim in which it sought relief from the automatic stay and a declaratory judgment on the issues raised by the complaint. In the counterclaim FDIC named as an additional party counter-defendant the corporate general partner of Charter in its capacity as a general partner. This entity appeared and adopted all the pleadings of Charter. Charter thereafter filed a Motion for Summary Judgment in which it contends that it is not subject to the penalties of forfeiture arising from Florida usury laws; and that the mortgage is properly acknowledged as a matter of law and, therefore, the strong-arm section of the Bankruptcy Code cannot be utilized by the Debtor-in-Possession to avoid the interest of the FDIC.

Based upon the evidence presented and the stipulation of the parties as to the stay issue, the Court determined that, unless the mortgage is invalid for one or both of the reasons urged by Charter, the FDIC is entitled to relief from the automatic stay. Accordingly, the stay was continued pending resolution of the validity of the mortgage.

The Court will first consider the usury issue inasmuch as the validity of FDIC's contention that it is not subject to penalties imposed by state usury laws is a threshold question, resolution of which may have a decisive effect on the outcome of this adversary proceeding.

The usury claim of Charter is based on the anti-usury statute of this state which in pertinent part provides as follows:

(2) Unless otherwise specifically allowed by law, any person making an extension of credit to any person, who shall willfully and knowingly charge, take or receive interest thereon at a rate exceeding 25 percent per annum but not in excess of 45 percent per annum, or the equivalent rate for a longer or shorter period of time, whether directly or indirectly or conspires so to do, shall be guilty of a misdemeanor of the second degree ...

(3) Unless otherwise specifically allowed by law, any person making an extension of credit to any person, who shall willfully and knowingly charge, take or receive interest thereon at a rate exceeding 45 percent per annum or the equivalent rate for a longer or shorter period of time, whether directly or indirectly or conspire so to do, shall be guilty of a felony of the third degree ...

(7) No extension of credit made in violation of any of the provisions of this section shall be an enforceable debt in the courts of this state.

Section 687.071(2), (3) and (7), Florida Statutes (1981).

█ Charter contends that Metropolitan Bank charged a rate of interest in excess of 25% per annum, which rate is in excess of the allowable legal rate. In addition to the stated interest rate of 2% above the prevailing prime interest rate, Charter included a committment fee and a servicing fee totalling $270,000 in computing the interest rate on its $2,700,000 loan. Under applicable state law, however, a committment fee is not generally to be considered as interest when determining whether the percentage of interest charged was usurious. "A com-

mittment fee is 'consideration for the lender's ... funds which are committed to be loaned in the future' rather than additional interest." *St. Petersburg Bank & Trust Co. v. Hamm,* 414 So.2d 1071, 1074 (Fla.1982) (citing and reaff'g *Financial Federal Savings & Loan Association v. Burleigh House,* 305 So.2d 59, 63 [Fla. 3d DCA 1974] ), *cert. discharged,* 336 So.2d 1145 (Fla.1976), *cert. denied,* 429 U.S. 1042, 97 S.Ct. 742, 50 L.Ed.2d 754 (1977).

The Defendant, FDIC, while recognizing that Charter's characterization of the committment and service fees as interest raises factual issues not amenable to resolution by summary judgment, does not challenge that characterization within the framework of its motion for summary judgment. Rather, the FDIC, for the limited purpose of its Motion for Summary Judgment, admits usury but contends that even if the interest rate which Metropolitan charged Charter was usurious, the FDIC, as an instrumentality of the federal government, is not subject to the forfeiture provision of the state usury law, Florida Statutes, § 687.071(7).

Whether or not the FDIC, as assignee of Metropolitan, is subject to the affirmative defense of usury must be determined by an indepth analysis of the nature of the FDIC as an instrumentality of the federal government. The FDIC was created by Congress in 1933 as an insurer of bank deposits to restore public confidence in the banking system. 12 U.S.C. § 1811 *et seq,* (The Federal Deposit Insurance Act). It is a corporation organized under an Act of Congress and all corporate stock is owned and held by the United States. By virtue of the Congressional mandate, once an FDIC member bank is closed by the appropriate state or national banking authority, the FDIC is required to accept the position of liquidator or receiver of the closed bank. 12 U.S.C. §§ 1821(c), (e). *See, Gunter v. Hutcheson,* 674 F.2d 862 (11th Cir.1982), *cert. den.,* —— U.S. ——, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982).

Thus, the FDIC, by express design by Congress, was invested with a dual role. First, it was created as an insurer of feder-

ally issued bank deposits; second, it was created to function as the liquidator of banks which were closed down by agencies charged with regulatory banks, either state or federal. This second role was created, of course, to assume an orderly liquidation of the assets of failed banks, especially to assure the maximization of returns to depositors through a controlled operation in situations somewhat similar to the situation involved in this case. There is no doubt that this was the express aim of Congress and was a clear cut expression of the Congressional intent to stablize the banking industry after the dark days of bank failure during the Great Depression.

In the present case, Metropolitan was closed by the Comptroller of the State of Florida pursuant to state law. Fla.Stat. § 658.79 (1981). The FDIC was appointed as liquidator, and proceeded to consummate a purchase and assumption transaction pursuant to 12 U.S.C. § 1823(e), whereby the FDIC, in its corporate capacity, purchased the lesser quality loan portfolio of Metropolitan from itself as liquidator. This portfolio included the debt owed to Metropolitan by Charter, which the FDIC is attempting to collect.

█ As a general rule, when a party becomes a successor in interest through legal process, that party's interest is subject to whatever defense the obligor has against its predecessor in interest. *British Columbia Investment Co. v. FDIC,* 420 F.Supp. 1217, 1224 (S.D.Cal.1976); Fla.Stat. § 673.-302(3)(a) (1981) (Uniform Commercial Code). However, recognizing that the FDIC operates as a public service and in furtherance of federal public policy protecting the institution of banking, Congress and the courts have afforded the FDIC complete defenses to various agreements between its predecessor in interest, the failed bank, and the obligor where the agreement would impair the value of the note and mortgage. *See,* 12 U.S.C. § 1872(e); *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1941) (fraud in the inducement); *FDIC v. Velez,* 678 F.2d 371 (1st Cir.1982) (collateral agree-

ments); *Gunter v. Hutcheson, supra* (fraud in the inducement); *FDIC v. First Mortgage Investors,* 485 F.Supp. 445 (E.D.Wis. 1980) (secret agreement); *FDIC v. Vineyard,* 346 F.Supp. 489 (N.D.Tex.1972) (lack of consideration).

 It is well established that the rights of the FDIC and the liability of the obligor involve a federal question and are to be determined by federal law. *D'Oench, Duhme & Co., supra* 315 U.S. at 456, 62 S.Ct. at 679. Applying federal law, an instrumentality of the United States is not subject to the imposition of any fine or penalty imposed by a state absent express Congressional authorization. *Missouri Pacific Railroad Co. v. Ault,* 256 U.S. 554, 563–64, 41 S.Ct. 593, 597, 65 L.Ed. 1087 (1921). Section 687.071(7) of the Florida Statutes imposes a penalty on creditors who violate Florida's criminal usury statute by declaring the entire debt non-enforceable.

FDIC contends that because Congress never authorized the imposition of such a penalty against the FDIC, as an instrumentality of the United States it is not subject to § 687.071(7). In support of its position, the FDIC cites *FDIC v. Tito Castro Construction, Inc.,* 548 F.Supp. 1224 (D.P.R. 1982). While not controlling, the analysis of the District Court for the District of Puerto Rico is persuasive. The Court in *Tito Castro* applied federal law and followed the reasoning in *Gunter v. Hutcheson, supra* and determined that application of the Puerto Rico usury statute as an affirmative defense in a foreclosure action brought by the FDIC "would clearly frustrate the Congressional purpose in creating the Federal Deposit Insurance Corporation: to promote the stability of, and confidence in, the national banking system." *Id.* at 1226 (citations omitted). Further recognizing that the FDIC in its corporate capacity as assignee is not subject to all the defenses which the obligor may have against the FDIC's predecessor in interest, *id.,* the Court concluded that the FDIC is not subject to the Puerto Rico usury statute. *Id.* at 1225.

It is self-evident that if the FDIC could be visited by the sins of its predecessor, i.e. the Metropolitan Bank, the policy aim of Congress could be completely frustrated. The FDIC, unlike an ordinary assignee who acquires its interest through a voluntary, arms-length transaction, acquired the mortgage portfolio of Metropolitan Bank pursuant to 12 U.S.C. § 1823(e), having determined that the purchase and assumption transaction would best protect depositors.

Charter, on the other hand, contends that state law should be controlling and if state law provides for the defense of usury, that defense should be available in an action brought by the FDIC. In support of this position, Charter cites *FDIC v. Lattimore Land Corp.,* 656 F.2d 139 (5th Cir.1981) and *Riverside Park Realty Co. v. FDIC,* 465 F.Supp. 305 (M.D.Tenn.1978). In both cases, however, the Court was called upon to determine whether or not the loan at issue was usurious. Appropriately, the Courts looked to state law to resolve that question. In neither case did the FDIC raise the issue under consideration in the present case, i.e. whether the defense of usury may be asserted against the FDIC in its corporate capacity as successor in interest to a failed bank.

In cases in which a party asserts the affirmative defense of usury against the FDIC, the FDIC has contended either that as a matter of state law there is no usury, *see, e.g. Lattimore Land Co., supra* and *Riverside Park Realty Co., supra;* or as in the case at bar, that as a matter of federal public policy the defense of usury may not be asserted against the FDIC. *Tito Castro Construction, Inc., supra.* As noted earlier, in the present case, the FDIC has stipulated for the limited purpose of its motion for summary judgment, that the loan made by Metropolitan to Charter was usurious. The question, therefore, of whether or not the loan was, in fact, usurious is not presently before this Court, and the cases cited by Charter are not applicable.

 Charter next contends that the United States waived sovereign immunity

**136**

in § 106 of the Bankruptcy Code, and therefore, is subject to a claim of usury.

Section 106 states in pertinent part:

"(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose."

11 U.S.C. § 106(a).

As noted earlier, consent by the federal government to be subject to a claim is not synonymous with consent to be penalized, and an instrumentality of the United States may not be penalized absent *express* Congressional authorization. *See, Ault, supra,* 256 U.S. at 563–64, 41 S.Ct. at 597. Section 106 contains no such express authorization.

■ In light of the foregoing, this Court is of the opinion that the FDIC is not subject to penalties or forfeitures arising from Florida's usury statutes as a matter of law, and the FDIC, therefore, is entitled to summary judgment as to Count I.

This leaves for consideration the FDIC's Motion for Summary Judgment as to Count II of Charter's Complaint. Count II alleges that the mortgage, when recorded, was not properly acknowledged as required by § 695.03 of the Florida Statutes and, therefore, the recordation is a nullity. Charter, as debtor-in-possession, seeks to resort to the Trustee's special voiding power granted by § 544 of the Bankruptcy Code, commonly referred to as the strong-arm clause which in pertinent part provides as follows:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer or property of the debtor or any obligation incurred by the debtor that is voidable by—

(3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commence-

ment of the case, whether or not such a purchaser exists.

(b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544.

■ It is clear that unlike the defense of usury asserted by Charter, the claim of nonperfection is a valid defense and the FDIC cannot prevail if, in fact, the mortgage lien of its predecessor in interest, i.e. Metropolitan, is subject to challenge under § 544 of the Bankruptcy Code. To put it in a different posture, this Court is satisfied that an unperfected or improperly perfected mortgage lien would fail when attacked by a Trustee under § 544.

The threshold issue to be resolved is whether or not the subject mortgage which Charter now seeks to avoid was properly acknowledged. Charter contends that the mortgage is improperly acknowledged because the note attached to the recorded mortgage as Exhibit B is in a form different from that originally signed by Mr. Gonzalez on behalf of Charter. According to Mr. Gonzalez, he executed a promissory note which had an interest cap of 21%; the note attached to the mortgage shows an interest cap of 21.5%. In all other respects, the form of the promissory notes are identical. Section 695.01 of the Florida Statutes requires recordation of mortgage interest in real property.

Section 695.03 states in pertinent part as follows:

"To entitle any instrument concerning real property to be recorded, the execution must be acknowledged by the party executing it or the execution must be proved by a subscribing witness to it before the officers and in the form and manner following:

(1) IN THIS STATE—An acknowledgement or proof made within this state may be made before any judge, clerk, or depu-

ty clerk of any court; a United States commissioner or magistrate; or a notary public and the certificate of acknowledgement or proof shall be under the seal of the court or officer, as the case may be. All affidavits and acknowledgements heretofore made or taken in this manner are hereby validated..."

Section 695.03(1), Florida Statutes (1981).

The acknowledgement of the mortgage and security agreement appears following page 9 of the mortgage and security agreement after the signature and before the attached legal description and promissory note (FDIC Exh. # 1). The acknowledgement provides:

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

The foregoing Mortgage and Security Agreement was acknowledged before me this 11th day of February, 1981, by ARMANDO GONZALEZ, President of CHARTER EXECUTIVE DEVELOPMENT COMPANY, INC., a Florida corporation, General Partner of CHARTER EXECUTIVE CENTER, LIMITED, a Florida limited partnership.

/s/ Beth Capriola
NOTARY PUBLIC
State of Florida at Large
My Commission Expires:
3/13/81
[SEAL]

The acknowledgement is very similar to the suggested form of acknowledgement in Florida Statutes, § 695.25(2) except that the acknowledgement at issue fails to indicate that Mr. Gonzalez signed "on behalf of" Charter. In a nearly identical case, the late Justice Sebring writing for the Florida Supreme Court upheld the validity of an acknowledgement where the acknowledgement did not indicate that the corporate officers who executed the mortgage did so on behalf of the corporation, but the acknowledgement identified the individuals as corporate officers. The Court, looking to the document as a whole and recognizing that certificates of acknowledgement should be upheld despite technical omissions, found the acknowledgement valid.

*House of Lyons, Inc. v. Marcus,* 72 So.2d 34 (Fla.1954). Accordingly, this Court is of the opinion that the acknowledgement at issue substantially complies with § 695.03, Florida Statutes and is valid.

Assuming, but not determining that the promissory note attached to the recorded mortgage is different from the note actually signed by Mr. Gonzalez, this fact does not defeat an otherwise valid acknowledgement and recordation. According to § 695.03, all acknowledgements made in compliance with the statutory requirements are validated. Absent an allegation of fraud or duress, a certificate of acknowledgement valid on its face may not be collaterally attacked. *Jensen v. Skibinski,* 158 Fla. 331, 334–35, 28 So.2d 328, 329–30 (1946). It is established law that the purpose of attaching a promissory note to a mortgage is that of evidencing the underlying debt. The description of the debt need not be precise and may even be vague so long as it is sufficient to prevent the parties from substituting one debt secured by the mortgage with one that is not secured. *See, Newman v. Greene,* 92 Fla. 684, 109 So. 582 (1926); *Hanley v. Bullard,* 80 Fla. 578, 86 So. 439 (1920); *Equitable Building and Loan Association v. King,* 48 Fla. 252, 37 So. 181 (1904).

At the pretrial conference, Charter next contended that the mortgage is invalid because Mr. Gonzalez never executed the mortgage and security agreement in his corporate capacity. In support of this contention, Charter filed an Affidavit in Opposition to Motion for Summary Judgment in which Mr. Gonzalez swears that "as President of Charter Executive Development Company, Inc., General Partner of Charter Executive Center Limited, [he] never acknowledged the execution of the Mortgage and Security Agreement."

There is no doubt that Charter executed the mortgage inasmuch as this was admitted by Charter in Paragraph 3 in its Answer to the Counterclaim. The only issue is whether the factual dispute as to whether or not Mr. Gonzalez executed the

138

mortgage in his capacity as President of Charter prevents this Court from resolving this controversy by summary judgment. As previously discussed, a certificate of acknowledgement that is valid on its face may not be collaterally attacked absent an allegation of fraud or duress. Furthermore, the acknowledgement which indicated Mr. Gonzalez's position as a corporate officer of Charter was sufficient on its face under applicable Florida law. *See, House of Lyons, supra.*

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by FDIC be, and the same hereby is, granted as to both Counts of Plaintiff's Complaint, and the Complaint filed by Charter be, and the same hereby is, dismissed with prejudice. It is further

ORDERED, ADJUDGED AND DECREED that the automatic stay be, and the same hereby is, lifted as to the FDIC and the FDIC be, and the same hereby is, permitted to pursue its foreclosure action against the Debtor in an appropriate forum. It is further

ORDERED, ADJUDGED AND DECREED that inasmuch as the parties have stipulated that the mortgage validity issues constitute issues "arising in" this case under Title 11 U.S.C., this Order is deemed to be a dispositive order and shall be operative and effective immediately upon entry by the Clerk of the Bankruptcy Court pursuant to Emergency Local Rule (d)(2) unless stayed by the Bankruptcy Judge or by a District Judge.