**FEDERAL DEPOSIT INSURANCE CORPORATION**

v.

**NATIONAL UNION FIRE INS. CO. OF PITTSBURGH, PA., et al.**

**Civ. A. No. 85–1346 "L".**

United States District Court,
W.D. Louisiana,
Lafayette-Opelousas Division.

March 21, 1986.

Lee C. Kantrow, David S. Rubin, Richard F. Zimmerman, Jr., Lois Hawkins Riley, Bob D. Tucker, Baton Rouge, La., M. Elizabeth Smith, Washington, D.C., Colette J. Winston, Washington, D.C., for plaintiff, Federal Deposit Ins. Corp.

Joseph Onebane and John C. Torian, II, Lafayette, La., for defendants Kenneth A. Black, E.W. Caughfield, Jerry E. Chauvin, Ronald Cockerham, Frank T. Daly, Isom Deshotels, Charles Dore, John D. Edwards, Herbert Lafleur, Jr., Willie Meche, John Q. Miller, Andrew Moresi, Jr., George W. Prather, Allen Pommier, John M. Rabalai, Elie Stelly, Glenn James Stelly, Earl B.

Taylor, John Thistlewaite, and Paulk A. Voitie.

Dando B. Cellini, Victoria L. Knight and Gene W. Lafitte, Jr., New Orleans, La., for defendant Nat. Union Fire Ins. Co. of Pittsburgh, Pa.

James R. Lewis, Lafayette, La., for defendant Roy Edwin Caughfield.

James T. Guglielmo, Opelousas, La., for defendant E.W. Caughfield.

Joseph R. Joy, III, Lafayette, La., for defendant John D. Edwards & Isom Deshotels.

I. Jackson Burson, Jr., Eunice, La., for defendant Herbert LaFleur, Jr.,

Walter C. Corbell, pro se.

### MEMORANDUM RULING

DUHE, District Judge.

The defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") moves this court for summary judgment dismissing plaintiff's claim against it. Plaintiff, Federal Deposit Insurance Corporation ("FDIC") brought this action against the former officers and directors of Planters Trust and Savings Bank ("Planters Bank") and their insurer, National Union, alleging that the officers and directors caused approximately $11,000,000 of losses on loans extended by Planters Bank, which contributed to the bank's eventual failure.

FACTS

On May 18, 1984, the Louisiana Commissioner of Financial Institutions ("Commissioner") declared Planters Bank to be in an unsafe and unsound condition. Pursuant to former La.R.S. 6:454, now R.S. 6:391, the Commissioner closed Planters Bank, assumed exclusive possession of its property and affairs, and offered to the FDIC the appointment of receiver and liquidator of Planters Bank. The FDIC accepted the appointment pursuant to its obligation under 12 U.S.C. § 1821(e).

As receiver of the failed Planters Bank, the FDIC arranged a "purchase and assumption" transaction under 12 U.S.C. § 1823(e) whereby a financially sound bank purchased Planters Bank's "acceptable" assets and assumed all of the bank's liabilities, including deposit liabilities. The cost of these assumed liabilities exceeded the value of the assets purchased. In order to generate cash that could be transferred to the assuming bank to balance the value of the assumed assets and liabilities, the FDIC, in its receivership capacity, sold to the FDIC, in its corporate capacity, assets that were unacceptable to the acquiring bank. The unacceptable assets included the causes of action asserted by the FDIC in its corporate capacity in this lawsuit.

In 1981, National Union had issued to Planters Bank a Directors and Officers Liability and Corporation Reimbursement Policy (the "Policy"). The Policy was effective from September 5, 1981 through September 5, 1984, though comparable predecessor policies issued by National Union to Planters Bank had been in effect since 1976. The corporate reimbursement provision of the Policy provides the insured bank with coverage for claims against its officers and directors to the extent that the bank indemnifies them pursuant to the bank's by-laws or applicable law. The directors and officers liability provision of the Policy provides the bank's directors and officers coverage to the extent they are not indemnified by the bank. The latter provision protects the directors and officers:

> against loss (as hereinafter defined) arising from any claim or claims which are first made against the Insureds, jointly or severally, during the policy period by reason of any Wrongful Act (as hereinafter defined) in their respective capacities as Directors or Officers.

The Policy defines "loss," in part, as

> any amount which the Insureds are legally obligated to pay for a claim or claims made against them for Wrongful Acts, and shall include damages, judgments, settlements, cost, charges and expenses ... incurred in the defense of actions, suits or proceedings and appeals therefrom.

The Policy defines "wrongful act," partially, as

any breach of duty, neglect, error, misstatement, misleading statement, omission or other act done or wrongfully attempted by the Insureds or any of the foregoing so alleged by any claimant or any matter claimed against them solely by reason of their being such Directors or Officers of the Company named in Item 1 of the Declarations.

The Company named in item one of the declarations is Planters Bank. The insureds named under the directors and officers liability portion of the Policy are Planters Bank and the directors and officers of Planters Bank.

Endorsement No. 8 of the Policy provides:

In consideration of the premium charged, it is hereby agreed that the Insurer shall not be liable to make any payment for loss ... in connection with any claim or claims made against the Insureds by an Insured as defined in this policy, including [Planters Bank], except for stockholders derivative actions brought by a shareholder of the Company other than an Insured.

Because Planter's Bank is one of the Policy's insureds, Endorsement No. 8 would protect National Union from liability for any claim the bank brought against its fellow insureds—the officers and directors. Defendant National Union argues that as the assignee of Planters Bank's causes of action, the FDIC "stands in the shoes" of Planters Bank and is therefore similarly subject to National Union's defense under Endorsement No. 8. Plaintiff counters (1) even if an ordinary assignee would be subject to National Union's defense under Endorsement No. 8, because of its special status, the FDIC is not, and (2) the parties did not intend Endorsement No. 8 to bar recovery on claims asserted by the FDIC.

## APPLICABLE LAW

### A. Does the FDIC Enjoy a Status Superior to that of an Ordinary Assignee?

■ It is fundamental contract law that an assignee of a contractual right is subject to any defense the obligor had against the assignor. *In Re Governor's Island*, 39 B.R. 417, 421 (Bankr.E.D.N.C.1984); Restatement (Second) of Contracts § 336 (1979); U.C.C. § 9–318 (1981). The courts and Congress have recognized that while this rule generally binds the FDIC as the assignee of a failed bank's assets, *see Re Charter Executive Center, Ltd.*, 34 B.R. 131 (Bankr.M.D.Fla.1983); *FDIC v. Timbalier*, 497 F.Supp. 912 (N.D.Ohio 1980), there are certain situations in which the FDIC acquires greater rights than its predecessor and may avoid defenses to which the assignor would have been subject.

■ The situation in which the FDIC's superior status has been longest recognized is where the FDIC is seeking to recover on a promissory note it has purchased from among the failed bank's assets. In 1942, the Supreme Court held, as a matter of federal common law, that in this situation the maker of the promissory note is estopped from asserting against the FDIC a defense that it and the failed bank had "secretly" agreed that the bank would not collect on the note. *See D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). Congress codified FDIC's "common law" protection against secret side[1] agreements in 12 U.S.C. § 1823(e) which provides:

No agreement which tends to diminish or defeat the right, title or interest of the Corporation [FDIC] and any asset acquired by it under this section, either as security for a loan or by a purchase, shall be valid against the corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming

---

1. The Fifth Circuit has applied § 1823 to defeat the defense that an alleged oral agreement takes precedence over documents reflected in the failed bank's records. *See, e.g., FDIC v. Castle*, 781 F.2d 1101 (5th Cir.1986); *FDIC v. Hoover-Morris Enterprises*, 642 F.2d 785 (5th Cir.1981); *Black v. FDIC*, 640 F.2d 699, *cert. denied*, 454 U.S. 838, 102 S.Ct. 838, 70 L.Ed.2d 119 (1981).

an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the Board of Directors of the bank or its loan committee which approval shall be reflected in the minutes of said board or committee and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

Under § 1823(e), the FDIC's actual knowledge of a side agreement does not render that agreement a valid defense against the FDIC as long as the agreement does not appear in the failed bank's records. *FDIC v. Merchants National Bank of Mobile*, 725 F.2d 634, 640 (11th Cir.), *cert. denied*, — U.S. ——, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984).

■ The immediate policy behind *D'Oench* and § 1823(e) is to protect the FDIC when it is carrying out its statutorily-mandated duty to protect depositors. *Howell v. Continental Credit Corp.*, 655 F.2d 743, 746 (7th Cir.1981). *See* 12 U.S.C. § 1811. Once the FDIC has been appointed as receiver of a failed bank, it has two alternatives to satisfy its statutory obligation to pay off the insolvent bank's depositors. *See Merchants*, 725 F.2d at 637; *Gunter v. Hutcheson*, 674 F.2d 862, 865–66 (11 Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). The simpler method is to simply close the bank, liquidate its assets and pay off the insured depositors, covering any shortfall with insurance funds. *Gunter*, 674 F.2d at 865. Yet, this direct deposit payoff method has numerous disadvantages. For example, the failed bank is permanently closed, which reduces public confidence in the banking system, most of the failed bank's employees lose their jobs, accounts are frozen and checks are returned unpaid to the drawer. *Merchants*, 725 F.2d at 637 (quoting Burgee, *Purchase and Assumption Transactions Under the Federal Deposit Insurance Act*, 14 The Forum 1146, 1153 (1979)).

The preferred alternative is for the FDIC to undertake a purchase and assumption transaction pursuant to U.S.C. § 1823, as it did in the instant case. The *Merchants* court explained:

"The Purchase and Assumption transaction avoids the numerous adverse results of the deposit insurance payout method. Virtually all of the failed bank's depositors and other creditors are fully protected by the assumption of their deposits and debts by the assuming bank. The FDIC as insurer of deposits is relieved from the difficult and time consuming obligation of paying off hundreds or even thousands of depositors. Of utmost significance is the fact that the banking services to the citizens of the community previously served by the failed bank continue uninterrupted as the assuming bank agrees to reopen all of the failed bank's offices on the next business day."

*Id.* at 638 (quoting Burgee at 1156).

■ Though the FDIC prefers the use of the purchase and assumption alternative, there are limitations on the FDIC's ability to employ that alternative. *Merchants*, 725 F.2d at 638. The FDIC may not undertake a purchase and assumption transaction unless it determines (1) that such action is "reasonably necessary to save the cost of liquidating, including paying the insured accounts" or (2) that continuing the bank's operation is necessary to provide the community with adequate banking services. *Id.* at n. 1 (citing 12 U.S.C. § 1823(c)(4)(A) (1982)). Only when the FDIC's Board of Directors determines such action will minimize the FDIC's losses may the corporation enter a purchase and assumption transaction. 12 U.S.C. § 1823(e). The *Merchants* court explained the nature of the evaluation process through which the FDIC and its Board of Directors must go:

This exercise of judgment requires the FDIC to measure its loss under the insured deposit payoff alternative against its loss under a purchase and assumption transaction. To calculate possible loss under the purchase and assumption transaction as compared to a payoff of insured deposits, all of the failed bank's assets must be evaluated to determine

the potential cost to FDIC of assuming unfavorable assets and to determine the price to be paid by the assuming bank for acceptable assets.

The process of evaluation must be undertaken quickly. "[A] purchase and assumption must be consummated with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services." *Gunter,* 674 F.2d at 865.

*Merchants,* 725 F.2d at 638.

Because of the speed with which it is essential for the FDIC to evaluate a failed bank's assets in deciding whether to undertake a purchase and assumption transaction, the FDIC is provided the protection of § 1823(e). *Gunter,* 674 at 870. The FDIC must be able to make the decision relying on the failed bank's books and records, without fear of unknown defenses that may lie against the bank. *Id.*

■ Section 1823(e) does not, however, protect the FDIC against all defenses that could have been raised against the failed bank. By its terms, the statute does not apply to side agreements that are embodied in writing nor to defenses that are apparent on the face of the asset upon which the FDIC brings action. *FDIC v. Blue Rock Shopping Center,* 766 F.2d 744, 753 (3rd Cir.1985); *Howell v. Continental Credit Corp.,* 655 F.2d 743, 746–49 (7th Cir.1981). In *Howell,* the Seventh Circuit held that § 1823 and the *D'Oench* doctrine are inapplicable

> where the document the FDIC seeks to enforce is one ... which facially manifests *bilateral* obligations and serves as the basis of the [obligor's] defense. In these situations, we do not believe the [obligor] should be held liable automatically simply because the FDIC has become a belated party to the transaction.

*Howell,* 655 F.2d at 746–47.

In *Howell,* the FDIC, as receiver of a closed bank, executed a purchase and assumption transaction whereby the deposits and "readily marketable" assets of the closed bank were sold to an assuming bank, and the remaining assets were sold to the FDIC in its corporate capacity. Included in the assets assumed by the FDIC, was a substandard loan portfolio containing certain leases assigned as collateral to the bank.

Prior to the bank's closing, the lessor had sued the lessee to enforce the latter's obligations under the leases, and the lessee defended on the grounds that the lessor had breached its lease obligations. The FDIC, as purchaser of these assets, intervened, claiming the leases were valid and enforceable. Relying on § 1823(e) and the *D'Oench* decision, the district court held that the lessee was estopped from raising the lessor's breach as a defense to the FDIC's claim.

On appeal, the Seventh Circuit reversed, holding that § 1823(e) was inapplicable to the facts before it. 655 F.2d at 748. The court reasoned:

> This is not a case such as *D'Oench* and its progeny where the maker's defense depended solely upon a secret unrecorded agreement, usually oral, of which the FDIC could have had no notice. The defense appellant posits here arises directly and explicitly from the provisions of the leases which were in the bank's files and which the FDIC now seeks to enforce.

*Howell,* 655 F.2d at 746–47.

National Union argues that, as in *Howell,* the policies[2] giving rise to the FDIC's special status under *D'Oench* and 1823(e) do not control in the instant case. National Union contends that its defense is not based upon any secret, unrecorded agreement, but rather is a defense contained on the very face of the insurance contract upon which the FDIC seeks to recover.

**2.** The *Howell* court limited its consideration to whether § 1823(e) and *D'Oench* protected the FDIC from the lessee's defense. The court did not address the issue whether a special rule of federal common law should be fashioned from the policies underlying § 1823(e) and *D'Oench* to protect the FDIC from a defense that did not arise out of a secret, unrecorded agreement.

National Union argues further that even if the FDIC would be protected from similar defenses to the enforcement of a loan document, such as a note or guaranty, § 1823(e) and the *D'Oench* doctrine have never been applied to other kinds of agreements.

This court agrees that *D'Oench* and § 1823 do not explicitly control the facts in this case. Yet, it cannot agree that the policies behind *D'Oench* and § 1823 should not protect the FDIC. Moreover, there is no reason that the FDIC should be subject to unknown defenses when suing on an insurance contract, though it would not be subject to similar defenses when suing under a loan agreement. *See, e.g., FDIC v. Gulf Life Insurance Co.*, 737 F.2d 1513 (11th Cir.1984).

In *Gulf Life*, the Eleventh Circuit applied the policy underlying § 1823(e) and *D'Oench* to a situation in which the FDIC, in its corporate capacity, sought to collect 100% of the unearned premiums from the insurer of the failed bank's installment loan debtors. Though the insurer had actually received only 35% of the premiums the failed bank had collected from its debtors, the policy under which the FDIC sought the premium refund provided that the insurer was liable for 100% of the unearned premiums. The insurer argued that though there were no documents indicating that it had received only 35% of the premiums, and the FDIC had no actual knowledge of this fact, the FDIC was not entitled to more than a 35% refund of the unearned premiums because, under Alabama law of estoppel, waiver and unjust enrichment,[3] the failed bank would not have been so entitled.

The court found that because the theories of waiver, estoppel and unjust enrichment are not defenses that arise out of an agreement between the parties, § 1823(e)

does not apply to them. *Id.* at 1516. The court, however, fashioned a rule of federal common law providing that the FDIC's vulnerability to the state law defenses of estoppel, waiver or unjust enrichment, depends on its actual knowledge of events at the time of the assumption and purchase transaction. *Id.* The court held that if the FDIC actually knows of such a defense at the time it enters a purchase and assumption transaction, it is subject to the defense. *Id.* at 1518. When, however,

> the FDIC in its corporate capacity obtains an asset in the course of the purchase and assumption transaction, for value, and good faith, and without knowledge of the defenses, its rights on the asset are not limited by the defenses of waiver, estoppel or unjust enrichment.

*Id.* *Accord Gunter*, 674 F.2d at 868 ("Although ... the specific language of § 1823(e) does not protect the FDIC from [fraud claims], ... principles of federal common law protect the FDIC from ordinary fraud claims of which it lacks knowledge"). *Cf. Merchants*, 725 F.2d at 640 (FDIC's knowledge immaterial under § 1823(e)). *Id.* The court reasoned:

> In the common situation where a note is a negotiable instrument, estoppel, waiver, and unjust enrichment are defenses to which a holder in due course would be impregnable. *See* UCC § 3–305(2). *Gunter's* analysis thus persuades us that in the majority of cases little dashing of commercial expectations would result from a uniform federal rule protecting the FDIC from such defenses.... As the Supreme Court acknowledged in *Kimball Foods*, "[o]f course, *formulating special rules [favoring the federal agency] would be justified if necessary to vindicate important national interests.*" 440 U.S. at 740. *Such interests unquestionably include public confidence and stability in the banking system.*

---

**3.** As well as theories of accounts stated, accounts settled, and accord and satisfaction,

which were rejected under § 1823(e).

*Gulf Life,* 737 F.2d at 1518 (emphasis added).

The court found that such a rule was justified in the case before it for essentially the same reasons justifying § 1823(e) and the *D'Oench* doctrine, that is, "to allow the FDIC to reach a considered opinion that a purchase and assumption transaction will better protect the FDIC from loss than a liquidation. To the extent the FDIC knows of a defense, its ability to form this judgment is unimpaired." *Id.* at 1518.

For the same policy reasons, a number of courts have also held that the FDIC is not subject to the defense of usury.[4] *See Re Charter Executive Center, Ltd.,* 34 B.R. 131 (Bankr.M.D.Fla.1983); *FDIC v. Tito Castro Construction, Inc.,* 548 F.Supp. 1224, 1226 (D.P.R.1982) *aff'd,* 741 F.2d 475 (1st Cir.1984). In *Re Charter,* the court held:

> It is self-evident that if the FDIC could be visited by the sins of its predecessor, i.e., the [closed bank], the policy aim of Congress could be completely frustrated. The FDIC, unlike an ordinary assignee who acquires its interest through a voluntary arms-length transaction, acquired the mortgage portfolio of [the closed bank] pursuant to 12 U.S.C. § 1823(e), having determined that the purchase and assumption transaction would best protect depositors.

34 B.R. at 135. In *Tito Castro,* the court held:

> Because application of the Puerto Rico usury law could actually frustrate a federal program by potentially denying to the FDIC nearly $1,200,000 on the ten promissory notes in issue here, the court holds that as a matter of federal law the

---

**4.** There are also other cases indicating that the FDIC does not simply stand in the shoes of its predecessor bank. For example, a court has refused to award punitive damages against the FDIC as receiver because "as receiver, the FDIC represents the bank and its depositors, and shareholders (citation omitted). Thus, an award of punitive damages against the receiver would not punish the bank, but its innocent creditors and uninsured depositors." *Professional Asset*

FDIC in its corporate capacity is not subject to a state usury claim on a note acquired by it from a state-chartered FDIC-insured bank (footnote omitted).

*Tito Castro,* 548 F.Supp. at 1226.

■ This court finds that though § 1823(e) and *D'Oench* do not expressly protect the FDIC from National Union's defense under the Policy, the broader policy behind these rules should perhaps protect the FDIC in this case as it did in *Gulf Life.* Though no court has as yet so ruled, insurance exclusions or endorsements, such as that at issue in the instant case, may also be the type of defense for which a special rule of federal common law should be fashioned. That is, if an insurance policy assumed by the FDIC contains a defense that is clearly applicable to the FDIC, so that when the agency undertakes the purchase and assumption transaction, it should actually know that the defense is valid against it, then, as in *Howell,* the FDIC should be subject to that defense. When a policy provision is not clearly applicable to the FDIC, however, the agency should not be subject to the defense it allegedly provides.

Such a rule, though inviting all the problems involved in the construction and interpretation of contracts, would be consistent with the federal public policy to which Congress and the *D'Oench, Gulf Life,* and *Howell* courts have all adhered. That policy is to protect the funds deposited in federally-insured banks by ensuring that the FDIC can rely on a failed bank's records to determine whether a purchase and assumption transaction would best protect those insured deposits. *See FDIC v. Vogel,* 437 F.Supp. 660, 663 (E.D.Wis.1977).

*Management, Inc. v. Penn Square Bank, N.A.,* 566 F.Supp. 134, 136–37 (W.D.Okla.1983).

Another court has recognized that unlike a bank suing its officers and directors, the FDIC represents itself as a creditor and also the other creditors of the bank when it purchases the bank's causes of action. *FDIC v. American Bank & Trust Share,* 460 F.Supp. 549, 561 (D.S. C.1978), *aff'd,* 629 F.2d 951 (4th Cir.1980).

## B. *Whether Endorsement No. 8 was Intended to Bar Claims by the FDIC*

Cases such as *D'Oench, Gulf Life* and *Re Charter* indicate that it is improper to conclude that the FDIC is like any other assignee bank subject to all defenses against its predecessor bank. The fact that the FDIC has been viewed traditionally in a different light than ordinary assignees, in more than the limited context of *D'Oench* and § 1823(e), alone makes it unclear whether the endorsement to the insurance policy barring the predecessor bank's recovery on certain claims similarly bars the FDIC's recovery.

Moreover, the FDIC is clearly suing in a different capacity than would its predecessor bank. As the court recognized in *FDIC v. American Bank & Trust Shares, Inc.*, 460 F.Supp. 549, 561 (D.S.C.1978), unlike a bank suing its officers and directors, the FDIC represents not only the failed bank's shareholders, but also itself as a creditor, as well as its predecessor's other creditors. Therefore, insofar as the FDIC is suing to recoup its own losses, it is arguably like any other third party bringing action against the insuror and the insured, who would not be barred by Endorsement No. 8. Insofar as the agency represents the failed bank's depositors and other creditors, it is again in the capacity of a third party, rather than standing directly in the failed bank's shoes. To the extent that the FDIC represents the failed bank's shareholders, however, it is suing in the same capacity as the failed bank. Yet, to the extent that such action is analogous to a shareholders' derivative action coverage may be provided.

Because it is unclear on the face of Endorsement No. 8 whether it applies to an action by the FDIC against the insured officers and directors and the insuror, evidence outside of the four corners of the Policy is admissible to. show the parties' intent in drafting the endorsement. Plaintiff maintains that "only internal struggles between directors and officers who are also shareholders of significant percentages of bank stock are intended to be barred by the endorsement. That is, the endorsement is intended (at least in part) to prevent collusive lawsuits."

National Union, of course, contends that the parties did in fact intend that claims by the FDIC against the officers and directors be excluded by Endorsement No. 8. Predictably, the deposition testimony that the parties have offered in support of their respective positions conflicts. There is, therefore, an issue of fact whether the policy provision was intended to exclude claims by the FDIC. *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. FDIC, et al*, No. 3–85–51 at 4 (E.D. Tenn.1985). Accordingly, National Union's motion for summary judgment must be denied.