770 F.2d 236
 STATE OF MAINE and Patricia M. McDonough, Commissioner,
Maine Department of Labor, Petitioners,
v.
UNITED STATES DEPARTMENT OF LABOR, and Ford B. Ford, Under
Secretary of Labor, Respondents.
Penobscot Consortium, Intervenor.
 No. 85-1080.
 United States Court of Appeals,
First Circuit.
 Argued June 7, 1985.
Decided Aug. 9, 1985.
 
 Pamela W. Waite, Asst. Atty. Gen., Augusta, Me., with whom James E. Tierney, Atty. Gen., Augusta, Me., was on brief for petitioners.
 Vincent C. Costantino, U.S. Dept. of Labor, Office of the Solicitor, Washington, D.C., with whom Francis X. Lilly, Sol. of Labor, William H. DuRoss, III, Associate Sol. for Employment and Training, and Harry L. Sheinfeld, Counsel for Litigation, Washington, D.C., were on brief for Secretary of Labor.
 Noel H. Klores, Washington, D.C., with whom Klores, Feldesman & Tucker, Washington, D.C., was on brief for Penobscot Consortium.
 Before CAMPBELL, Chief Judge, RUBIN* and BREYER, Circuit Judges.
 BREYER, Circuit Judge.
 
 
 1
 Maine's Department of Labor ("Maine Labor") and Penobscot Consortium both applied to the United States Department of Labor ("DOL") for a grant to provide job training for Maine's migrant and seasonal farmworkers. 29 U.S.C. Sec. 1672. The DOL awarded the grant to Penobscot Consortium; its competitor (Maine Labor) here asks us to review DOL's decision, and, in effect, to set it aside. 29 U.S.C. Sec. 1578. We decline to do so.
 
 
 2
 * Maine Labor's basic claim is that, in awarding the grant to Penobscot, DOL did not follow its own prescribed procedures; and, in any event, the procedures that DOL actually followed are contrary to a governing statute. 29 U.S.C. Sec. 1672. In support of this claim, Maine Labor points to the fact that DOL announced it would award the grant on the basis of scores given by a review panel (which considered the applicants' experience, administrative ability, and so forth), and yet DOL did not award the grant to the highest scoring applicant. The panel gave Maine Labor 86.6 points, and Penobscot 84.3 points, out of 100 possible points. Despite Maine Labor's higher score, DOL gave the grant to Penobscot. DOL administrators said they found the scores so close--within a "competitive range" of three points--that Penobscot's advantages as an incumbent (lower start-up costs, less service disruption) tipped the balance in its favor.
 
 
 3
 Maine Labor appealed within the agency. And, an agency ALJ said that DOL had applied its 'scores-within-a-close-competitive-range-are-not-final' theory only to incumbents; its theory therefore amounted to a bonus for incumbents; and, under existing procedures, such a bonus was improper. See 41 C.F.R. Secs. 29-3.805-52 (1984). In addition, the ALJ noted that DOL's administrators had not held post-scoring discussions with both competitors, as existing procedures required. See 41 C.F.R. Secs. 29-3.805-53, -3.805-54 (1984). The ALJ thought this practice not only violated DOL's rules, but also violated a statute requiring DOL to use grant award "procedures consistent with standard competitive government policies." 29 U.S.C. Sec. 1672(c)(1). The Undersecretary of DOL then reviewed the ALJ's decision and reversed it. 29 U.S.C. Sec. 1576. Essentially, he concluded that in close cases DOL administrators have discretion to consider incumbency, or, as he called it, "being in place," as "a factor in selecting a service delivery agent." And, he awarded the grant for the October 1983-June 1985 grant period to Penobscot, which consequently administered Maine's migrant worker training program during that time.
 
 
 4
 Since DOL's Undersecretary made his decision, two sets of events have occurred that affect its review in this court. First, DOL has changed its grant procedures, so that applicants are now on notice that the "high scorer" may not always receive the grant. 49 Fed.Reg. 41118, 41120 (1984). Second, the relevant grant period (1983-85) has now expired. DOL has selected a grant recipient for the 1985-87 grant period, and the new grant administration period has begun. In light of this background, Maine Labor's legal arguments, and these supervening facts, we conclude that Maine Labor is not legally entitled to the relief that it seeks.
 
 II
 
 5
 Our basic conclusion rests upon our belief that (1) there is no significant, existing legal controversy between Maine Labor and DOL in respect to DOL's likely future conduct; and (2) we are without power to award meaningful relief in respect to DOL's past decision to award Penobscot the 1983-85 grant. We discuss each of these points in turn.
 
 
 6
 1. Insofar as Maine Labor wants this court to issue an injunction or declaration prohibiting DOL from acting unlawfully in the future, it must show some reasonable likelihood of unlawful future behavior. See, e.g., United Public Workers v. Mitchell, 330 U.S. 75, 89-90, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947) ("hypothetical threat is not enough" to warrant declaratory relief); Connecticut v. Commonwealth of Massachusetts, 282 U.S. 660, 674, 51 S.Ct. 286, 291, 75 L.Ed. 602 (1931) ("Injunction ... will not be granted against something merely feared as liable to occur at some indefinite time in the future."); Murphy v. Hunt, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (per curiam) (to overcome mootness there "must be a 'reasonable expectation' or a 'demonstrated possibility' that some controversy will recur involving the same complaining party") (quoting Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975) (per curiam) ). In this case, Maine Labor would have to show a likely future violation of either (a) DOL's own procedures, or (b) the governing statute. As far as DOL's procedures are concerned, DOL has now made changes specifying that the high scorer will not automatically receive the grant; rather, scores are "advisory ... and not binding on the grant officer"--i.e., the grant officer may take other factors into account. 49 Fed.Reg. 41118, 41120 (1984). Maine Labor has not shown us any DOL regulation that is violated by these new procedures; nor has it given us any reason to believe it likely that DOL will violate any "consultative" or other requirement contained in its regulations.
 
 
 7
 Maine Labor cannot show any likely future violation of the statute for two reasons. First, the record here does not suggest that DOL will give large or important advantages to incumbency. The facts of this case illustrate only a relatively minor advantage provided to the incumbent--an advantage reasonably described as given to one "in place" in order to prevent disruptions that grant beneficiaries, e.g., migrant workers, might otherwise suffer. Moreover, DOL has said that in the future it will give no bonus for incumbency. The 1985-87 grant award results are consistent with that promise, for in every case the highest scoring applicant was given the award. Thus, at most, Maine Labor has shown one past instance in which DOL gave a small advantage to incumbency in a very close case.
 
 
 8
 Second, we see nothing in the statute that prohibits DOL from taking some account in close cases of advantages that incumbents may have as service providers (such as less disruption or lower start-up costs). The statute to which Maine Labor points says simply that DOL's procedures must be "consistent with" the government's "standard procurement policies." Assuming purely for the sake of argument that there is some "standard procurement policy" that says "no advantage of any sort may ever be given any incumbent," this statute would not require literal compliance. Rather, both the language of the statute and its legislative history show that Congress wished to give DOL some flexibility in its procurement of services for migrant farmworkers. When the law was considered by a Senate-House Conference, the Senate version of the bill required the Secretary of Labor to use "standard competitive government procurement policies." H.Conf.Rep. No. 889, 97th Cong., 2d Sess. 110 (1982), reprinted in 1982 U.S.Code Cong. & Admin.News 2705, 2732. The Conference added the words "procedures consistent with" as a prefix. Id. This addition gives DOL more flexibility and rules out literalism. Moreover, when it passed the new statute Congress expressly repealed a section of former law that said that DOL could not "assign any preferential weighting factor" to an incumbent. See former 29 U.S.C. Sec. 873(c)(1), repealed by Job Training Partnership Act, Pub.L. No. 97-300, 96 Stat. 1357 (1982). The strongest support for Maine Labor (though not cited by either party) is the statement in the Senate Report that says "there should be no arbitrary competitive disadvantages for service providers who have no past program experience." S.Rep. No. 469, 97th Cong., 2d Sess. 17 (1982), reprinted in 1982 U.S.Code Cong. & Admin.News 2636, 2652 (emphasis added). But the type of disadvantage attached here, reflecting the negative effects of disruption where the competitive scores were close to even, is not "arbitrary." Thus, Maine Labor has not convinced us that DOL--even were it to resume the practice that this case illustrates--would violate its own (newly clarified) procedures or the statute.
 
 
 9
 2. Maine Labor's claim that DOL violated its own regulations in awarding Penobscot the 1983-85 grant is moot, for even if Maine Labor is correct on this point (a matter on which we express no view), we cannot award effective relief. The Department of Labor itself has a policy against providing relief to one improperly denied a grant once the grant period has ended. This policy is revealed, not only by its statement in its brief, but also by a DOL regulation that limits the available remedy to the duration of the grant period. See United Indians of Nebraska v. Donovan, 702 F.2d 673 (8th Cir.1983) (per curiam) (finding challenge to grant under predecessor to current Act moot in part because of the expiration of the relevant grant period). The Department has specifically rejected a proposed regulation that said an applicant wrongly denied a grant would be selected "in the succeeding [grant] period." 40 Fed.Reg. 33211 (1983) (emphasis added). Such a proposal, the Secretary found, might deny "the most competent, efficient, and qualified services ... to farmworkers." (Br. at 14.) Instead, DOL adopted a regulation that denies relief to aggrieved applicants, even where the decision in their cases comes during the present grant period, if it comes towards the end of the period. The regulation states:
 
 
 10
 in the event the ALJ rules that [an applicant whose grant application was denied] should have been selected ..., the Department will select and fund the organization within 90 days of the ALJ's decision unless the end of the 90-day period is within 6 months of the end of the funding period.
 
 
 11
 29 C.F.R. Sec. 633.205(e) (1984). As reasonably interpreted by DOL, see Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965), this regulation would deny relief even if the ALJ decides in time, but higher authority rescinds the ALJ's award, and any recission of the recission comes too late in the day.
 
 
 12
 Maine Labor argues that, even if it cannot obtain relief under DOL's existing policies or regulations, we should create some form of relief--relief that would involve its receiving some kind of advantage or a direct award in a later grant period. But, we cannot do so. For one thing, we have found no authority showing that a court has the power to create this type of relief--relief that would take a later grant away from a later winner. For another thing, this is not a proper case for imaginatively fashioning such relief out of the Administrative Procedure Act, say, by finding DOL's refusal to grant relief "arbitrary" or "capricious," 5 U.S.C. Sec. 706(2)(A), and then "compel[ling] agency action unlawfully withheld." 5 U.S.C. Sec. 706(1). The simple reason is that DOL's "no relief" policy is not "arbitrary" or "capricious". Rather, DOL's policy against allowing such relief reflects a reasonable balancing of the interests involved: the interests of Maine Labor, of other competitors, and of the farmworker beneficiaries of the program. It is, of course, important for any agency to apply its regulations fairly, and to avoid mistakes; yet often regulations are complex; and the process of deciding whether an applicant has been wronged takes time. To follow a determination of wrong with a remedy applicable to the next grant period threatens to interfere unfairly with other applicants who have legitimately and properly received the award for the next period. (In the competition for 1985-87 grants, Penobscot's score was eight points higher than Maine Labor's, and a third applicant, in addition to Penobscot and Maine Labor, participated in the competition.) More importantly, such relief (as DOL points out) threatens to injure the interests of the farmworkers themselves by depriving them of the services of the best qualified applicants.
 
 
 13
 Moreover, DOL apparently retains procedures adequate to obtain judicial relief in most cases. Applicants for this type of grant have well over a year to obtain a favorable adjudication. Although this time was not sufficient for Maine Labor in the case now before us, Maine Labor apparently failed to seek expedited review of its case, as it could have done under available DOL regulations and procedures. See, e.g., 29 C.F.R. Sec. 18.42 (1984). Regardless, an agency judgment that sacrifices, as here, a degree of remedial fairness in order to protect the more important interests of the statute's beneficiaries strikes us as entitled to judicial respect. Cf., e.g., Chevron, U.S.A. v. Natural Resources Defense Council, Inc., --- U.S. ----, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (discussing deference due agency's view of governing statute). We cannot, in effect, undermine or destroy that agency policy by creating a presently nonexistent form of relief.
 
 
 14
 Maine Labor also asks us to create a special monetary damages remedy. Again, we have found no authority suggesting that we have this power. That fact, the relatively minor nature of the violations (if any) still at issue, and the fact that any damages would likely have to be paid at the expense of migrant and seasonal farmworkers whom the statute seeks to help, lead us to deny this request.
 
 
 15
 For these reasons, the petition for review is
 
 
 16
 Denied.
 
 
 
 *
 Of the Fifth Circuit, sitting by designation