**FEDERAL SAVINGS AND LOAN IN-SURANCE CORPORATION, Acting in its Corporate Capacity, Plaintiff,**

v.

**Larry V. LOCKE, Defendant.**

**Larry V. LOCKE, Counter–Plaintiff,**

v.

**FEDERAL SAVINGS AND LOAN IN-SURANCE CORPORATION, as Receiver for State Federal Savings and Loan Association of Lubbock, Counter–Defendant.**

**Civ. No. A–88–CA–781.**

United States District Court,
W.D. Texas,
Austin Division.

June 14, 1989.

Steven L. Hoard, John M. Brown, Amarillo, Tex., for plaintiff and counter-defendant.

Waggoner Carr, Austin, Tex., for defendant and counter-plaintiff.

## MEMORANDUM OPINION AND ORDER

WALTER S. SMITH, Jr., District Judge.

In this case, the Federal Savings and Loan Insurance Corporation, acting in its Corporate Capacity ("FSLIC Corporate"), seeks to recover on four promissory notes signed by defendant, Larry V. Locke ("Locke"). The four notes at issue here were purchased by FSLIC Corporate from an insolvent thrift. Locke asserts as affirmative defenses and as the basis for counterclaims, wrongful foreclosure, bad faith, breach of fiduciary duty, violations of the Texas Deceptive Trade Practices—Consumer Protection Act ("DTPA"), usury, breach of contract, and common law and statutory fraud. The Federal Savings and Loan Insurance Corporation, acting as Receiver for State Federal Savings and Loan Association of Lubbock, Lubbock, Texas ("FSLIC Receiver"), is defending Locke's counterclaims.

FSLIC Corporate asserts that (1) Locke's affirmative defenses based on fraud, bad faith, breach of fiduciary duty, violations of the DTPA, and usury are invalid as a matter of federal law; (2) Locke's claims of wrongful foreclosure and breach of contract do not constitute an affirmative defense to the notes, and must be asserted against FSLIC Receiver; and (3) FSLIC Corporate is entitled to summary judgment on the notes as a matter of law. FSLIC Receiver asserts that, as a matter of federal statutory and common law, it is not liable for any of Locke's claims, other than his breach of contract and inadequacy of notice of foreclosure claims. As to those claims, FSLIC Receiver urges dismissal on the grounds of mootness.

Prior to trial, the Court granted the motion in limine of FSLIC Corporate and FSLIC Receiver which limited introduction of evidence on the issues of fraud, violations of the DTPA, bad faith, breach of fiduciary duty, usury, and insufficiency of the bid prices at the foreclosure sales of Locke's properties.

This case came before the Court for jury trial with FSLIC Corporate's motion for summary judgment on the notes pending. Upon consideration of the parties' respective positions, the Court finds that the case should be disposed of without a trial.

The Court finds that as a matter of law none of Locke's claims constitutes a valid affirmative defense to FSLIC Corporate's recovery on the Locke Notes, and FSLIC Corporate's summary judgment on the notes is granted. The Court further finds that FSLIC Receiver as a matter of federal law is not liable for any of the relief sought by Locke, except for the breach of contract and wrongful foreclosure claims. Therefore, the Court treats the joint motion in limine of FSLIC Corporate and FSLIC Receiver as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and grants this motion as to Locke's counterclaims and affirmative defenses based on fraud, violation of the DTPA, bad faith, breach of fiduciary duty, usury, and insufficient bid prices. Even if Locke were to prevail at trial on either or both of his claims for breach of contract or wrongful foreclosure, any amount he might recover would be an unsecured claim against the

receivership estate, which the Federal Home Loan Bank Board has already determined to be worthless. Because any such recovery by Locke would be worthless, the Court finds that these claims should be dismissed as moot. Fed.R.Civ.P. 12(b)(1).

## I. *Factual Background*

With one major exception noted below, the facts of this case are essentially not in dispute.

In 1983, Locke was a real estate investor operating in Austin, Texas. At that time, Locke had established a banking relationship with State Savings and Loan Association of Lubbock, Lubbock, Texas ("State Savings") to assist Locke in the purchase of undeveloped real property for subsequent development. On December 2, 1983, Locke borrowed $1,500,000 from State Savings to purchase an 11.84 acre tract of undeveloped real estate in Austin, Texas. Locke signed a note in that amount, together with a deed of trust in favor of State Savings to secure payment of the obligation. In addition, Locke assigned to State Savings a fifty percent net profits interest in the property. On April 30, 1985, the December 2, 1983 loan was modified, renewed, and increased to $2,200,000. A renewal note and deed of trust were signed by Locke on that date.

Locke borrowed $225,000 from State Savings to purchase a 2.42 acre tract of undeveloped real estate in Austin on December 15, 1983. Locke signed a note for that amount and executed a deed of trust on the property. In addition, Locke assigned to State Savings a fifty percent net profits interest in the property.

On December 29, 1983, Locke borrowed $1,670,000 from State Savings in connection with a 15.04 acre tract of undeveloped land in Austin. Locke already owned this tract, subject to a first lien that the State Savings loan wrapped. Locke signed a note in that amount and executed a deed of trust on the 15.04 acre tract. He also assigned to State Savings a fifty percent net profits interest in the property. On July 23, 1985, this note was renewed, modified, and increased to $1,960,000. Locke signed a renewal note for that amount and a modified deed of trust to secure the obligation on July 23, 1985.

Locke borrowed $100,000 from State Savings for operating expenses on March 21, 1985. On that date, Locke executed a note in that amount and executed a second-lien deed of trust on a 49.8079 acre tract in Austin to secure performance of the obligation. The April 30, 1985 renewal note, the December 15, 1983 note, the July 23, 1985 renewal note, and the March 21, 1985 note are hereinafter collectively referred to as the "Locke Notes."

On December 19, 1985, the Federal Home Loan Bank Board ("Bank Board"), acting pursuant to 12 U.S.C. Section 1729(c)(1)(B) (1982), declared State Savings to be insolvent and appointed the Federal Savings and Loan Insurance Corporation as receiver. Pursuant to 12 U.S.C. Section 1729(a) (1978) the Bank Board authorized the Federal Savings and Loan Insurance Corporation to create a new federal mutual savings and loan association known as State Federal Savings and Loan Association of Lubbock, Lubbock, Texas ("State Federal"). On December 20, 1985, the Federal Savings and Loan Insurance Corporation, as receiver of State Savings, sold substantially all the assets of State Savings that the receiver owned or would thereafter acquire to State Federal. Included were the Locke Notes, the net profits agreements relating thereto, and State Savings' interest in the collateral securing the Locke Notes.

During the spring of 1986, Locke experienced difficulty in meeting his payment obligations under the terms of the Locke Notes. At this time, Locke entered into negotiations with State Federal for additional financing and to modify and renew the Locke Notes.

On June 26, 1986, Locke signed a note, renewal deeds of trust, and loan documents providing for the renewal and modification of the Locke Notes and for additional advances to Locke by State Federal. State Federal recorded the renewal deeds of trust, but no new funds were ever advanced by State Federal to Locke. At this point, the parties disagree over the facts.

Locke claims that the renewal and modification transaction was completed and that State Federal wrongfully failed to advance the additional funds as it had promised. The parties acknowledge that as part of the renewal and modification transaction, Locke agreed to provide State Federal with additional collateral in the form of a second lien on a 145 acre tract of property near Austin. FSLIC Receiver asserts that, as a condition precedent to the renewal and modification agreement, Locke was required to provide State Federal with an estoppel agreement consenting to State Federal's second lien from the first lienholder on on the 145 acre tract. FSLIC Receiver claims that Locke never provided the required estoppel agreement and therefore the renewal of the Locke Notes was never completed.

State Federal made demand on Locke to pay the Locke Notes, which he failed to do. On October 14, 1986, State Federal caused to be posted for sale at nonjudicial foreclosure the 11.84 acre tract, the 2.42 acre tract, the 15.04 acre tract, and the 49.8079 acre tract in accordance with the terms of the deeds of trust. State Federal agreed to postpone the foreclosure sale of these properties, and the properties were again posted for foreclosure on December 16, 1986. On January 6, 1987, the four tracts were sold at a nonjudicial foreclosure sale. State Federal bid in a portion of the unpaid balance on each of the Locke Notes, was the highest bidder at the sale, and thus acquired the four tracts. The deficiencies remaining on the Locke Notes following the foreclosure totalled $1,271,119.97.

Thereafter, State Federal filed suit against Locke in state court to collect the deficiencies on the Locke Notes on April 7, 1989.

On August 25, 1988, FSLIC Corporate purchased three of the Locke Notes with deficiency balances. On August 26, 1988, the Bank Board, acting pursuant to 12 U.S.C. Sections 1464(d)(6)(A) (1982) and 1729(b)(1)(A) (1982), declared State Federal insolvent and appointed the Federal Savings and Loan Insurance Corporation as receiver of the institution ("FSLIC Receiv-

er"). On August 26, 1988, FSLIC Receiver entered into a purchase and assumption agreement with MeraBank Texas, FSB ("MeraBank"), pursuant to which FSLIC Receiver transferred to MeraBank substantially all of State Federal's assets not sold to FSLIC Corporate on the previous day, including one of the Locke Notes. On March 13, 1989, MeraBank assigned to FSLIC Corporate the remaining Locke Note with a deficiency balance that had not been transferred to FSLIC Corporate by State Federal on August 25, 1988. As of the date of trial, FSLIC Corporate was the owner of all four of the Locke Notes.

## II. Parties' Contentions

Locke contends that the former president, chief executive officer, and sole shareholder of State Savings, Tyrell Barker, fraudulently induced Locke into entering into raw land loan transactions on promises of financing and continuing refinancing to complete the raw land development projects for sale, promises that State Federal continued to make and on which Locke relied. Locke asserts that State Savings and State Federal fraudulently urged him to continue development of the real estate projects and gave him continued assurances of refinancing. Locke further alleges that in exchange for such financing and refinancing through completion, State Savings and State Federal, as managed and controlled by the Federal Savings and Loan Insurance Corporation, required an assignment of fifty percent of the profits derived from the sale of the developed properties. Locke contends that the assignment of net profits constitutes the charging of usurious interest under Texas law.

Locke also asserts that State Savings and State Federal were participants in the raw land ventures for which State Savings provided funding, notwithstanding the terms of the loan documents, which do not so provide. Moreover, Locke also alleges that State Federal, as controlled by the Federal Savings and Loan Insurance Corporation, wrongfully breached its agreement in June of 1986 to provide continued funding for the Locke projects, and thereafter proceeded to foreclose on the proper-

ties securing the Locke Notes at bids far below market value and without giving Locke adequate notice of the sales.

Locke claims that the acts of State Savings and State Federal, as controlled by the Federal Savings and Loan Insurance Corporation, constituted wrongful foreclosure, bad faith, breach of fiduciary duty, violations of the DTPA, usury, breach of contract, and common law and statutory fraud, for which Locke seeks compensatory and punitive damages.

Locke seeks to avoid liability to FSLIC Corporate on the Locke Notes by affirmative defenses of (1) fraud and fraudulent inducement (based on the false promises and misrepresentations of State Savings and State Federal, and Locke's detrimental reliance thereon); (2) statutory fraud under Section 27.01 of the Texas Business and Commerce Code; (3) illegality (based on usurious interest charged by the combination of stated interest on the Locke Notes, fees, and the fifty percent net profits interest participation agreements; (4) estoppel and promissory estoppel (based on the joint participation and control of the Locke projects by State Savings and State Federal).

FSLIC Corporate's position in this case is twofold: first, that Locke cannot bring a counterclaim for affirmative relief against FSLIC Corporate for acts allegedly committed by State Federal or State Savings; second, that none of Locke's claims properly constitutes an affirmative defense to his liability on the Locke Notes, but rather, must be asserted against FSLIC Receiver. FSLIC Corporate urges summary judgment be granted against Locke on the Locke Notes.

FSLIC Receiver claims that federal statutory and common law prevents Locke from recovering judgment against it based on bad faith, breach of fiduciary duty, violations of the DTPA, usury, and common law and statutory fraud. FSLIC Receiver concedes that Locke has raised a legitimate fact issue as to whether State Federal wrongfully failed to fund the renewal and modification loan in June of 1986 as to whether State Federal failed to give Locke proper notice of the foreclosure sale on the property securing the Locke Notes. It is FSLIC Receiver's position, however, that since the Bank Board has determined that the claims of State Federal's unsecured creditors are worthless, Locke has lost any possibility of obtaining any money damages from the receivership estate. Accordingly, FSLIC Receiver urges this Court to dismiss Locke's claims for breach of contract and wrongful foreclosure as moot.

### III. *Discussion*

#### A. Dual Capacities of the Federal Savings & Loan Insurance Corporation

Like the Federal Deposit Insurance Corporation ("FDIC"), the FSLIC often acts in two distinct capacities. On the one hand, FSLIC acts as a receiver of a failed thrift, marshalling its assets in order to pay the institution's creditors. In this capacity, FSLIC as receiver merely takes the place of any receiver that might be appointed under state law. On the other hand, in its corporate capacity FSLIC regulates and monitors the thrift industry, insures eligible deposits, makes insurance payouts, and provides financial assistance to insured thrifts. Several courts have recognized the distinction between their legal capacities. *Godwin v. FSLIC*, 806 F.2d 1290, 1291 n. 1 (5th Cir.1987); *Womble v. Dixon*, 752 F.2d 80, 81 (4th Cir.1984); *Gibraltar Building & Loan Ass'n v. State Savings & Loan Ass'n.*, 607 F.Supp. 722, 723 n. 2 (N.D.Cal.1985). When acting in its corporate capacity, FSLIC is operating as a distinctly separate entity from its receivership capacity, pursuant to authority derived from a specific statutory scheme passed by Congress in the exercise of a constitutional function or power to protect and stabilize the national savings and loan system. *Godwin*, 806 F.2d 1290 at 1291 n. 1. There is a similar line of cases distinguishing between the Federal Deposit Insurance Corporation acting in its corporate and receivership capacities. *See FDIC v. Ashley*, 585 F.2d 157, 161 (6th Cir.1978) (FDIC acts in dual capacity as receiver and purchaser of failed bank assets); *Freeling v. Sebring*, 296 F.2d 244, 245 (10th Cir.1961); *Trigo v. FDIC*, 847 F.2d 1499 (11th Cir.1988); *Gun-*

*ter v. Hutcheson,* 674 F.2d 862 (11th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982).

■ In this case, FSLIC appears in its two distinct capacities. Acting pursuant to 12 U.S.C. Section 1729(f), the Bank Board determined that the stability of State Federal was threatened by severe financial conditions which made financial assistance by FSLIC Corporate necessary to reduce the risk to FSLIC Corporate posed by State Federal. In accordance with 12 U.S.C. Section 1729(f), the Bank Board directed FSLIC Corporate to enter into an agreement with State Federal for the purchase of certain of State Federal's assets. The Bank Board was clearly acting within its statutory authority in directing FSLIC Corporate to enter into the purchase and assignment transaction with State Federal. It is clear that federal common law governs the rights and obligations of the FDIC and FSLIC when such entities are acting in their corporate capacities. *Trigo,* 847 F.2d at 1502–03 (11th Cir.1988); *FDIC v. Wood,* 758 F.2d 156, 159 (6th Cir.1985), *cert. denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985); *Gunter,* 674 F.2d at 869–70.

In relevant part, 12 U.S.C. Section 1729(f)(2)(A) provides as follows:

In order to facilitate a merger or consolidation of an insured institution described in subparagraph (B) with another insured institution or the sale of assets of such insured institution and the assumption of such insured institution's liabilities by another insured institution, the Corporation is authorized, in its sole discretion and upon such terms and conditions as the Corporation may prescribe—

(i) to purchase any such assets or assume any such liabilities;

\* \* \* \* \* \*

For purposes of this section, 12 U.S.C. Section 1729(f)(2)(B) describes an "insured institution" to mean one that is in default or one that, in the judgment of FSLIC Corporate, is in danger of default.

■ The legitimacy of the Bank Board's action under 12 U.S.C. Section 1729(f)(2) in directing FSLIC Corporate to enter into the purchase and assignment transaction with State Federal is clearly illustrated by the events that occurred on the following day. On August 26, 1988, the Bank Board declared State Federal insolvent and appointed the Federal Savings and Loan Insurance Corporation as receiver of State Federal. Federal Home Loan Bank Board Resolution No. 88–843 dated August 26, 1988. On that same day, the Bank Board authorized FSLIC Receiver to transfer substantially all of State Federal's assets, secured liabilities and deposit liabilities to MeraBank in accordance with 12 U.S.C. Section 1729(b)(1)(A).

■ These events of August 26, 1988, unmistakably illustrate that the purchase and assignment transaction between FSLIC Corporate and State Federal on the previous day was made in order to facilitate the sale of State Federal's assets and the assumption of certain of its liabilities by MeraBank, exactly the circumstances contemplated in 12 U.S.C. Section 1729(f)(2)(A). Neither FSLIC Corporate nor an acquiror like MeraBank is required to assume liabilities that are related to the assets they agree to purchase, and neither FSLIC Corporate nor the acquiror can be held liable for obligations they have not assumed. *Trigo,* 847 F.2d at 1502. The language of the purchase and assignment agreement between State Federal and FSLIC Corporate makes clear that FSLIC Corporate did not assume any liabilities of State Federal. While FSLIC Corporate purchased certain of State Federal's assets, including the Locke Notes, State Federal (now FSLIC Receiver) retained any related liabilities.

**B. Locke's Claims Against FSLIC Corporate**

In his pleadings and oral arguments, Locke raises several claims that he characterizes as affirmative defenses to his liability on the Locke Notes and asserts as the basis for counterclaims. Locke urges this Court to accept the proposition that should he be able to show that his damages exceed the amount owing on the Locke Notes, he

may recover the excess from FSLIC Corporate. This proposition is not supported by case law, and this Court does not to accept it.

■ Federal common law protects the FDIC and FSLIC, acting in their corporate capacities, from liability for acts of a failed institution. *See Trigo v. FDIC*, 847 F.2d 1499, 1503 (11th Cir.1988), *citing In re F & T Contractors, Inc.*, 718 F.2d 171, 180 (6th Cir.1983); *FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.*, 592 F.2d 364 (7th Cir.1979), *cert. denied*, 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979); *FDIC v. Tito Castro Const.*, 548 F.Supp. 1224, 1226 (D.P.R.1982), *aff'd*, 741 F.2d 475 (1st Cir. 1984); *FDIC v. James T. Barry Co.*, 453 F.Supp. 81, 82 (E.D.Wis.1978). Although the foregoing cases relate to FDIC acting in its corporate capacity, the reasoning applies equally to FSLIC acting in its corporate capacity, and there is no reason to make any distinction between these entities. *Mainland Savings Association v. Riverfront Associates, Ltd.*, 872 F.2d 955 (10th Cir.1989). *See also, FSLIC v. Murray*, 853 F.2d 1251 (5th Cir.1988).

C. Locke's Affirmative Defenses

In order to avoid liability on the Locke Notes, Locke has raised affirmative defenses of common law and statutory fraud, fraudulent inducement, illegality based on usury, estoppel based on FSLIC's conduct and joint participation and control of Locke's business ventures, breach of contract based on the failure to fund the June 26, 1986 renewal and modification loan, and wrongful foreclosure. The Court finds that none of these claims constitute valid affirmative defenses to Locke's liability on the Locke Notes.

Locke's affirmative defenses of fraud and fraudulent inducement are essentially based on the oral inducements and promises allegedly made by representatives of State Savings and State Federal. Locke claims that Tyrell Barker, President, Chief Executive Officer, and sole shareholder of State Savings, persuaded and advised Locke to focus upon raw land investments instead of income-producing properties, in which Locke had experience. Locke further alleges that Barker represented and assured him that State Savings had ample funds for raw land development and that State Savings would provide all necessary financing and refinancing for the acquisition and development of raw land projects through their completion. Locke further claims that Barker represented to Locke that funds would always be available from State Savings to prevent Locke from defaulting on the development loans. Locke claims that following the failure of State Savings and the transfer of his notes to State Federal, officers of State Federal continued the inducements and representations of Tyrell Barker. Locke asserts that the representations made to him were false, that the persons making them to him knew or should have known they were false, and that Locke relied on these promises and representations which ultimately resulted in this financial demise.

■ The Court need not consider whether Locke's allegations are in fact true because his claims are premised upon oral agreements that do not appear in the loan records of State Savings or State Federal. Defenses not appearing on the face of the records of the insured lender, such as those now raised by Locke, have been expressly rejected by the United States Supreme Court. *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). The U.S. Supreme Court demonstrated the expansive breadth of the *D'Oench, Duhme* doctrine when it decided *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). In *Langley*, the petitioners alleged that the insolvent bank misrepresented certain existing facts upon which they relied in executing the note that was the subject of the lawsuit. As in the present case, no reference to the alleged representations appeared in the bank records nor in the minutes of the bank's board of directors or loan committee meetings. The Court held that under the *D'Oench, Duhme* doctrine (as codified regarding the FDIC) a borrower who signed a facially unqualified note subject to unwritten conditions upon its repayment "has

lent himself to a scheme or arrangement whereby the banking authority ... was likely to be mislead, whether the condition consists of performance of a counterpromise (as in *D'Oench, Duhme*), or of the truthfulness of a warranted fact." *Id.* at 93, 108 S.Ct. at 402, 98 L.Ed.2d at 347. (parenthetical by the Court). Accordingly, the Court rejected the Langleys' claims and found them liable on the note.

The rationale of *D'Oench, Duhme* protects banks and the Federal Deposit Insurance Corporation. But this rationale has been uniformly extended to the Federal Savings and Loan Insurance Corporation and the savings and loan industry by this Circuit and other courts considering the issue. *FSLIC v. Lafayette Inv. Properties, Inc.*, 855 F.2d 196 (5th Cir.1988); *FSLIC v. Murray*, 853 F.2d 1251, 1254 (5th Cir.1988) (holding *"D'Oench* and its progeny protect FDIC and FSLIC alike against arrangements 'likely to deceive a regulatory authority.' ") (quoting *Taylor Trust v. Sec. Trust Fed. Sav. & Loan Ass'n*, 844 F.2d 337, 342 (6th Cir.1988)); *Morrison–Knudsen Co. v. C.H.G. Int'l, Inc.*, 811 F.2d 1209 (9th Cir.1987); *Mainland Savings Association v. Riverfront Associates, Ltd.*, 872 F.2d 955 (10th Cir.1989).

Under the rule of *D'Oench, Duhme*, Locke is barred from raising as defenses the alleged oral representations and promises made to him. The *D'Oench* doctrine bars Locke's affirmative defenses based upon fraud in the inducement, statutory and common law fraud, and estoppel. The policy supporting protection of the FSLIC and FDIC in collateral agreement situations applies equally to all situations in which the maker's defense is based on representations or conduct outside of the note itself. *See FDIC v. MM & S Partners*, 626 F.Supp. 681, 687 (N.D.Ill.1985). Courts regularly invoke this federal policy to bar nearly every defense by the maker of a note against the FDIC or FSLIC. *Lupin v. FSLIC*, Nos. 85–5896, 86–828, 86–1126 (consolidated), 1987 WL 9106 (E.D.La., Mar. 30, 1987).

■ Locke also claims that State Savings and State Federal were joint partici-

pants in the raw land projects because of the net profits assignments he made to State Savings, notwithstanding that the loan documents do not so provide. The *D'Oench, Duhme* doctrine prevents a borrower from showing that the transaction at issue is somehow different in form or substance than that shown in the records of the failed financial institution. Here, there is nothing in the records of State Savings or State Federal to indicate their joint participation in Locke's real estate projects. Accordingly, this defense must be rejected.

■ Locke claims as an affirmative defense that State Savings, State Federal, and FSLIC breached a duty of good faith and fair dealing to him and breached their fiduciary relationships with him. He further claims a defense based on the DTPA. These defense have no merit. This Court need not decide whether State Savings and State Federal owed Locke a duty of good faith and fair dealing or had a fiduciary relationship with Locke. Clearly, FSLIC owed Locke no such duties. FSLIC's duties extend solely to the protection of the insurance fund, not to any third parties, such as Locke. *See In re Franklin National Bank Securities Litigation*, 478 F.Supp. 210 (E.D.N.Y.1979). Furthermore, all of the acts Locke complains of as giving rise to this affirmative defense occurred prior to August 25, 1988, when FSLIC Corporate acquired the Locke Notes from State Federal. In any event, as set forth above, the *D'Oench, Duhme* doctrine prevents Locke from relying on the alleged oral representations and promises of officers of State Savings and State Federal to support his allegations of violations of the DTPA, and the breach of any duty of good faith and fair dealing and fiduciary relationships by State Savings and State Federal.

Locke asserts that the *D'Oench, Duhme* doctrine does not apply to bar his affirmative defenses and counterclaims. Locke claims that in this case State Savings "was taken over by FSLIC, changed in name to State Federal Savings and Loan Association ("State Federal"), and thereafter directed and managed by the FSLIC through

officers and staff retained or installed by FSLIC." Locke's Trial Brief filed April 13, 1989, at p. 2. Locke concludes, therefore, that FSLIC is estopped from asserting the *D'Oench, Duhme* doctrine to overcome Locke's affirmative defenses and counterclaims. Essentially, Locke's complaint here is that when the Bank Board declared State Savings insolvent on December 19, 1985, substantially all of State Savings' assets and liabilities were transferred to a newly created savings and loan association that was established and regulated by the Federal Savings and Loan Insurance Corporation.

 The Court finds the record does not support Locke's position that the Bank Board and FSLIC Corporate exercised dominion and control over State Federal such that FSLIC Corporate should be precluded from now asserting the *D'Oench, Duhme* doctrine in this case. FSLIC's organization of State Federal was clearly authorized and contemplated by 12 U.S.C. Section 1729(a).[1] Furthermore, this action was directed by the Bank Board and was done in order to facilitate the orderly liquidation of State Savings. The Bank Board's subsequent regulation of State Federal was nothing more than the normal exercise of its regulatory function, as mandated by Congress.[2] This Court refuses to hold that the exercise by the Bank Board and FSLIC Corporate of their regulatory and liquidation functions prevents FSLIC Corporate from now asserting the *D'Oench, Duhme* doctrine to avoid Locke's affirmative defenses and counterclaims in this case. To do so would not only emasculate the *D'Oench, Duhme*

doctrine, which has been so firmly embraced by the United States Supreme Court and those lower courts that have addressed the issue, but would serve to render the doctrine inapplicable to the majority of cases in which it has historically been applied.

In addition, at least one case has been brought to the attention of the Court in which the "control theory" now espoused by Locke has been expressly rejected. In *Metcalf, Ltd., et al. v. FSLIC*, No. 88–C–1511, *slip op.* (D.Cal., Dec. 27, 1988), a case involving State Federal, the borrower asserted that FSLIC, as receiver of State Federal, was estopped from asserting the *D'Oench, Duhme* doctrine because of FSLIC's control of State Federal. In rejecting this position, the *Metcalf* court noted that: "FSLIC no more controlled State Federal in December 1986 that it controls any other functioning savings and loan association not in receivership." *Metcalf, slip op.*, at 10.

For the reasons set forth above, this Court holds that FSLIC Corporate and FSLIC Receiver are not estopped from asserting the *D'Oench, Duhme* doctrine in response to Locke's affirmative defenses and counterclaims.

Locke claims as a further affirmative defense that the net profits assignments he made to State Savings constitute the charging of interest under Texas law. Locke does not claim that the stated interest rate on the face of any of the Locke Notes is usurious. Rather, he contends that the combination of the Stated interest rate and

---

1. 12 U.S.C. Section 1729(a) provides:
 In order to facilitate liquidation of insured institutions, the corporation is authorized (1) to contract with any insured institution with respect to the making available of insured accounts to the insured members of any insured institution in default, or (2) *to provide for the organization of a new Federal savings and loan association for such purpose subject to the approval of the Federal Home Loan Bank Board.* (emphasis added).

2. Congress created the Bank Board as an independent regulatory agency to oversee and supervise the nation's savings and loan system. 12 U.S.C. Section 1437. The Bank Board enjoys broad discretionary powers to regulate the sav-

ings and loan industry to safeguard its financial stability and to maintain and promote public confidence. 12 U.S.C. Sections 1461–1464, 1724–1730; *see generally, Fidelity Fed. Sav. and Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 144, 102 S.Ct. 3014, 3018, 73 L.Ed.2d 664 (1982); *Woods v. Fed. Home Loan Bank Bd.*, 826 F.2d 1400 (5th Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 1221, 99 L.Ed.2d 422 (1988). The scope of the Bank Board's regulatory authority over a federally insured thrift like State Federal extends "from its cradle to its corporate grave." *de la Cuesta*, 458 U.S. at 145, 102 S.Ct. at 3018 (quoting *People v. Coast Fed. Sav. & Loan Ass'n*, 98 F.Supp. 311, 316 (S.D.Cal.1951)).

the fifty percent profits interest assignment result in a usurious rate of interest under the Texas usury law.

■ The issue as to whether a profits assignment is usurious under Texas law has been considered and rejected by the Fifth Circuit Court of Appeals. *Casbeer v. State Fed. Sav. & Loan Ass'n of Lubbock*, 793 F.2d 1436 (5th Cir.1986). In *Casbeer*, the Fifth Circuit was faced with the issue of whether a net profits assignment used by State Federal constituted usury under Texas law. In that case, State Federal required the debtor to transfer a one hundred percent profits interest in exchange for State Federal's forebearance in foreclosing on secured obligations. The Fifth Circuit, in affirming the district court, held that such an assignment of profits does not constitute usury under Texas law.

■ Even if the Locke Notes were usurious under Texas law, federal law protects the Federal Savings and Loan Insurance Corporation from state usury penalties. First, the infliction of state usury provisions on the Federal Savings and Loan Insurance Corporation would directly and substantially interfere with the federal goal of protecting the national banking system. *FDIC v. Tito Castro Constr. Co., Inc.*, 548 F.Supp. 1224 (D.P.R.1982); *Charter Executive Center, Ltd. v. FDIC*, 34 B.R. 131 (M.D.Fla.1983). Furthermore, imposition of state usury laws upon FSLIC would have the same effect as assessing a penalty directly against FSLIC. An as instrumentality of the United States, 12 U.S.C. Section 1725(c), FSLIC is not subject to the imposition of a state law penalty unless expressly authorized by Congress. *Missouri Pac. Ry. Co. v. Ault*, 256 U.S. 554, 563–564, 41 S.Ct. 593, 597, 65 L.Ed. 1087 (1921); *Charter Executive Center, Ltd.*, 34 B.R. 131 (M.D.Fla.1983). Finally, the imposition of usury penalties on the Federal Savings and Loan Insurance Corporation would fail to serve the purpose of such penalties. State usury statutes, including the Texas statute, are typically punitive in nature and are designed as a deterrent to those who might otherwise charge a usurious rate of interest, a totally unnecessary deterrent as applied to FSLIC.

Accordingly, as a matter of federal law, Locke cannot maintain a usury claim as an affirmative defense to liability on the Locke Notes against FSLIC Corporate, or as the basis of a counterclaim against FSLIC Receiver.

■ Locke has asserted as additional affirmative defenses wrongful foreclosure and breach of contract in connection with State Federal's alleged failure to fund the June 26, 1986, modification and renewal transaction. As discussed above, Locke may not maintain these alleged acts *as defenses* to liability to FSLIC Corporate on the Locke Notes. Clearly, these claims could have been maintained as counterclaims against State Federal in an action by State Federal to collect on the Locke Notes. However, these claims do not constitute affirmative defenses to the Locke Notes and cannot be used against FSLIC Corporate as such.

Summary judgment is appropriate only when the Court is satisfied "that there is not genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The burden of establishing the absence of a genuine issue is on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden, however, extends only to facts that might affect the outcome of the suit under governing law. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Once this burden is met, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. This is a proper case for the application of summary judgment.

Locke does not dispute that he executed the notes. Since this Court has found that Locke's defenses are precluded, the Court

finds the motion for summary judgment filed by State Federal in the state court action, adopted by FSLIC Corporate at the time the case was removed to this Court, and pending at the time of trial, should be granted in favor of FSLIC Corporate and against Locke on the Locke Notes.

### D. Locke's Counterclaims Against FSLIC Receiver

The identical theories put forth by Locke on his affirmative defenses are also made by him as the basis for counterclaims against FSLIC Receiver. Except for the breach of contract and the wrongful foreclosure claims (based on insufficiency of notice), Locke is precluded from asserting his claims as counterclaims for all of the reasons they do not constitute affirmative defenses against FSLIC Corporate, because of the *D'Oench, Duhme* doctrine and federal instrumentality immunity from state law penalties. FSLIC Corporate and FSLIC Receiver have not filed a motion to dismiss Locke's affirmative defenses and counterclaims based on fraud, fraudulent inducement, usury, bad faith, breach of fiduciary duty, violations of the DTPA, estoppel, and promissory estoppel. However, they have filed a motion *in limine* seeking to limit the admissibility of evidence on these issues, and the issues have been well briefed by both parties. Accordingly, this Court will treat the motion *in limine* as a motion to dismiss the issues raised therein for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6), which this Court finds it should grant.

Locke claims that State Federal's foreclosure sale of the property securing the Locke Notes was insufficient for two reasons. First, he claims that State Federal's successful bids at the foreclosure sale were far below market value and that he did not receive adequate notice of the foreclosure sales. Secondly, Locke claims that State Federal breached its agreement to fund the June 26, 1986, renewal and modification loan. FSLIC Receiver denies Locke's claims, but urges this Court to dismiss them as moot.

The fundamental purpose of a court is to adjudicate claims and grant relief to an aggrieved party. It is hornbook law that federal courts may not adjudicate moot cases. *See e.g.*, 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sections 3533, 3533.1 (2d. ed. 1984). A lawsuit can become moot, and hence nonjusticiable, as a result of a change in circumstances either because the dispute no longer satisfies the "case or controversy" requirement of Article III of the United States Constitution or because prudential reasons dictate that the Court refrain from exercising its jurisdiction. *Id.*

There is no question that had Locke pursued his counterclaims for breach of contract and wrongful foreclosure against State Savings or State Federal, that lawsuit would have constituted a justiciable dispute. Had Locke's suit resulted in a judgment for damages, he could have executed on that judgment against State Savings or State Federal. Once the Bank Board declared State Federal insolvent and determined the claims of the unsecured creditors of the institution were worthless, however, Locke lost any possibility of obtaining the money damages he seeks. This change in circumstances rendered Locke's counterclaims against FSLIC Receiver moot both because the suit presents no live case or controversy and because the costs of adjudicating it far outweigh any legitimate value that a determination on the merits might possess.

When the Bank Board declared State Federal insolvent and appointed FSLIC as receiver, the Bank Board regulations required FSLIC Receiver to adopt Texas' priority scheme for the ordering of claims against insolvent institutions. *See* 53 Fed. Reg. 25,129, 25,133 (1988) (to be codified at 12 C.F.R. Section 569c.11(a)(6)). That scheme places depositors before general, unsecured creditors. Tex.Rev.Civ.Stat. Ann. art. 852a, Section 809(g) (Vernon Supp.1989). The regulations also required FSLIC Receiver to pay the valid claims of each class of creditors in descending order in full before moving to the next lower class and to make pro rata payments to the

first class that cannot be paid in full, leaving nothing for remaining lower classes of creditors. *See* 53 Fed.Reg. 25,133 (to be codified at 12 C.F.R. Section 569c.11(d)). Evaluating State Federal's financial condition in light of these regulations, the Bank Board determined that State Federal's assets were insufficient to satisfy its liabilities to its secured creditors and depositors and that, therefore, no funds would remain to pay the claims of class members with lower priorities.[3]

Accordingly, the Bank Board instructed FSLIC Receiver to notify claimants that their claims were worthless. Federal Home Loan Bank Board Resolution No. 88–843, dated August 25, 1988. Simply put, general, unsecured creditors of State Federal who sue FSLIC Receiver could never recover any money.

The Bank Board's worthlessness finding was not an "adjudication" of any claimant's rights because there was no consideration of the merits of any claim. Since there has been and will be no "adjudication" of claims, the recent decision of the Supreme Court in *Coit Independence Joint Venture v. FSLIC*, —— U.S. ——, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989) is inapplicable. It is a squandering of judicial resources to allow Locke to litigate the merits of his claims unless he has first overcome the Bank Board's worthlessness determination.

 Locke has not challenged the Bank Board's worthlessness determination in this proceeding. Such a determination constitutes a final agency action, which is reviewable under the provisions of the Administrative Procedure Act in an action against the Bank Board, but not subject to collateral attack through discovery or other means in individual lawsuits against the receiver. 5 U.S.C. Section 701 *et seq.* Nor has Locke challenged the Bank Board's adoption of the Texas statutory priority scheme that underlies the Bank Board's worthlessness finding.

Absent a court decision that the Bank Board's worthlessness determination was arbitrary and capricious and a subsequent agency determination that in fact assets do exist with which to pay the claims of unsecured creditors, Locke can have no viable claim for relief. *Id.*

A case in which a plaintiff cannot conceivably obtain the relief sought is not a live case or controversy for purposes of federal jurisdiction, and federal courts must therefore refrain from hearing it. As the Supreme Court has explained:

> The duty of this court, as of every judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions.... It necessarily follows that when ... an event occurs which renders it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment....

*Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895); *see also Central States, S.E. & S.W. Areas Pension Fund v. Central Transp., Inc.*, 841 F.2d 92, 95–96 (4th Cir.1988) (citing *Mills* with approval). The essential question is whether the Court can grant relief that will have an impact on the parties and redress the wrong of which Plaintiff complains. *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70, 104 S.Ct. 373, 374, 78 L.Ed.2d 58 (1983) (per curiam); *Park County Resource Council, Inc. v. Dep't of Agric.*, 817 F.2d 609, 614 (10th Cir.1987). The Court finds that effective relief can not be granted to Locke in this case. His claims for breach of contract and wrongful foreclosure cannot be offset against the Locke Notes assigned to FSLIC Corporate, but

---

**3.** Because the Bank Board determined that there were no assets with which to pay the claims of general, unsecured creditors, its subsequent decision to instruct FSLIC Receiver to enter into a purchase and assumption agreement with MeraBank is irrelevant to FSLIC Receiver's position in this case. Even though the bulk of State Federal's assets were transferred to MeraBank, and the remaining assets were transferred to FSLIC Corporate, Locke was not prejudiced. Since all of those assets were insufficient to compensate secured creditors and depositors in full, unsecured creditors, like Locke, would have received nothing regardless of how the receivership was structured.

can only be asserted against the receivership estate which has no funds. Even if Locke's counterclaims against FSLIC Receiver were valid, the receiver would never have any assets with which to satisfy a judgment.[4]

In this regard, this case is much like the cases in which unsuccessful candidates for federal grants have pursued challenges to the denial of the grant even after the grant money has been fully disbursed to other candidates. In such cases, the courts have uniformly found the challenges to be moot. *See, e.g., Maine v. United States Dep't of Labor,* 770 F.2d 236, 239 (1st Cir.1985); *North Dakota Rural Dev. Corp. v. United States Dep't of Labor,* 819 F.2d 199, 200 (8th Cir.1987); *Campesinos Unidos, Inc. v. United States Dep't of Labor,* 803 F.2d 1063, 1068 (9th Cir.1986). Because no effective relief can be granted in this case, Locke's counterclaims for wrongful foreclosure and breach of contract fail to meet the case and controversy requirements of Article III and must be dismissed for lack of subject matter jurisdiction.

Even if Locke's counterclaims met Article III's case or controversy requirement, this Court is empowered to dismiss the claims as moot for prudential reasons. *See Franks v. Bowman Transp. Co.,* 424 U.S. 747, 756 n. 8, 96 S.Ct. 1251, 1260 n. 8, 47 L.Ed.2d 444 (1976); *In re: AOV Indus., Inc.,* 792 F.2d 1140, 1147 (D.C.Cir.1986). One of the important factors entering into decision to dismiss cases as moot on prudential grounds is "the feasibility or futility of effective relief should a litigant prevail," *AOV Indus., Inc.,* 792 F.2d at 1147–48, and "whether the parties before [the court] have, at the time of decision, suffi-

cient functional adversity to sharpen the issues for judicial resolution." *Int'l Bhd. of Boilermakers v. Kelly,* 815 F.2d 912, 915 (3d Cir.1987) (quoting *Dow Chem. Co. v. EPA,* 605 F.2d 673, 677–78 (3d Cir.1979)). Locke's counterclaims fall under this reasoning. Under no set of circumstances can Locke ever recover any money as a result of his claim against FSLIC Receiver, nor could Locke ever reduce his liability on the Locke Notes to FSLIC Corporate. Yet, litigating Locke's counterclaims would require a significant dedication of resources by Locke, FSLIC Receiver, and this Court. Because the expenditure of time and money will never result in Locke's obtaining the relief he seeks, a trial on the merits would be completely futile. Furthermore, Locke's situation is far from unique. In Texas alone, hundreds of lawsuits filed by claimants seeking to become unsecured creditors are pending against failed savings and loan associations in receivership, including numerous cases against State Federal. Protracted litigation of these numerous and factually complex commercial lawsuits will require enormous expenditures of time and resources by all the parties, including the Federal Savings and Loan Insurance Corporation, and by the Courts, but will serve no practical purpose. To conserve the limited resources of both the judiciary and the Federal Savings and Loan Insurance Corporation, this Court must decline to adjudicate Locke's counterclaims on prudential grounds.

For the foregoing reasons, this Court finds that Locke's counterclaims against FSLIC Receiver for wrongful foreclosure based on insufficient notice and breach of contract are moot, and that these claims

---

**4.** This court recognizes that in certain situations a claim for damages is not moot because insolvency is not sufficient to moot a claim. *Ratner v. Sioux Natural Gas Corp.,* 770 F.2d 512 (5th Cir.1985). However, this case is not like *Ratner.* Here it is not just a "mere possibility" that FSLIC Receiver will lack the means to satisfy any liability to Locke. Rather, it is undisputed that the State Federal Receivership estate is devoid of assets. Plaintiff, therefore, will never be able to collect on a judgment against the receivership estate, and the rationale of *Ratner* does not apply. Furthermore, this case differs from

*Ratner* because the Bank Board, in final agency action, has formally determined that no assets remain in the State Federal receivership estate for the payment of any unsecured general claims. Unlike the debtor in *Ratner,* FSLIC Receiver is not attempting to avoid paying or reducing its obligation to pay by alleging poverty. Quite simply, there are no assets in the receivership estate, and there is nothing with which to pay a judgment, and there never will be. Locke's suit is therefore analogous to a suit against a corporation which has been liquidated.

should be dismissed for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). Therefore,

IT IS ORDERED that FSLIC Corporate's adopted Motion for Summary Judgment is hereby GRANTED.

IT IS FURTHER ORDERED that Locke's affirmative defenses based on statutory and common law fraud, fraudulent inducement, usury, bad faith, breach of fiduciary duty, violations of the DTPA, estoppel, and promissory estoppel are hereby DISMISSED WITH PREJUDICE for failure to state a claim upon which relief can be granted.

IT IS FURTHER ORDERED that Locke's counterclaims against FSLIC Receiver for wrongful foreclosure and breach of contract are moot and DISMISSED for want of subject matter jurisdiction.